The **OHIO CASUALTY INSURANCE COMPANY**, an Ohio corporation,
Plaintiff,

v.

Ida Lee **HEANEY**, Administratrix of the Estate of Warren E. Heaney, Deceased, Richard W. Hooker, Lyman J. Smith, William Greene, and Jack R. Dinsmore, Trustee, Defendants.

No. 60 C 1955.

United States District Court

N. D. Illinois, E. D.

May 6, 1964.

E. Douglas Schwantes, of Berchem, Schwantes & Thuma, Chicago, Ill., for plaintiff, The Ohio Casualty Insurance Company.

J. Norman Goddess, Chicago, Ill., for defendant Ida Lee Heaney.

Richard G. Finn and Marshall E. LeSueur, Chicago, Ill., for defendants Richard W. Hooker, Lyman J. Smith and William Greene.

Lester B. Marshall, Chicago, Ill., for defendant Jack R. Dinsmore.

ROBSON, District Judge.

Plaintiff seeks a declaratory judgment of its nonliability under a policy of insurance of an aircraft which crashed in Lake County, Illinois, on May 2, 1959, causing the death of the pilot and injuries to three others. The pilot's administratrix and the injured passengers are named herein as defendants, as well as the insured, the owner of the craft.

The basis of the plaintiff's assertion of noncoverage is that the pilot was not at the time of the crash in possession of a medical certificate showing that he had passed a medical examination within the immediately preceding *twenty-four* months.

The very narrow problem revolves around the fact that the requisite form supplied by decedent's physician gave the date of the physical examination as *February 22, 1957*, which was clearly more than twenty-four months prior to the crash, whereas the physician testified that although he in fact made a physical examination of Warren Heaney on that date, he *also* made an examination on *May 21, 1957*, in connection with filling out the form required for flying.

The owner of the plane, Jack R. Dinsmore, seeks reimbursement for the loss of the plane.

The allegations of plaintiff's second amended complaint for declaratory judgment disclose, and the parties so stipulate, that plaintiff is an Ohio corporation and the defendants are Illinois residents. Plaintiff had, on July 17, 1958, issued a

policy of aircraft liability to one Dinsmore, Trustee, and on August 12, 1958, added coverage as to Warren Heaney as a pilot. The three injured passengers have severally filed personal injury suits against the deceased pilot's estate in the Circuit Court of Lake County, Illinois. The owner of the plane hull has also sued for its complete loss. The instant complaint alleges that Item 7, of the Declarations of the said policy, provided the pilot would operate the aircraft " 'while holding proper certificate(s) as required by the Civil Aeronautics Authority.' " The policy further provided by its terms that it did not apply "to any occurrence or to any loss or damage occurring while the aircraft is operated, while in flight, by other than a pilot or pilots set forth under Item 7 of the Declarations."

Plaintiff states that the administratrix of the late pilot is demanding it to defend her in those personal injury suits and pay the recoveries, if any, within the limits of the policy; the injured parties are seeking the rights of third parties under the policy, and the trustee, owner of the plane, is seeking to have the insurer defend him in the personal injury suits. Plaintiff denies all such liability to defend or reimburse, and seeks a declaration to that effect, and an injunction restraining the defendants from prosecuting the State court suits until the determination of this suit.

It is admitted that at the time Warren Heaney was piloting the plane the Federal Regulations, Title 14, Ch. I, Part 43, provided that a private pilot was not permitted to pilot an aircraft unless he had a medical certificate showing that he had passed a medical examination within the immediately preceding 24 months. But there was no admission that decedent did not have and pass such an examination within the said 24 months.

The Federal Regulations Piloting Rule provides:

"Sec. 43.41. * * * No person shall pilot an aircraft under the authority of a pilot certificate issued by the Administrator unless he has in his personal possession at all times, while piloting aircraft, a medical certificate or other evidence satisfactory to the Administrator showing that he has met the physical requirements appropriate to the flight privilege exercised. Medical certificates shall be valid within the following time limits: * * *

"(c) *Third Class*—24 calendar months for those operations requiring a private or student pilot certificate.

"Sec. 43.41–1. * * * A medical certificate *becomes valid on the date the physical examination is conducted*, and continues in effect for the remainder of that month plus the number of calendar months specified in Sec. 43.41. * * * "

The Court is convinced, after a study of the evidence, documentary and oral, that the medical examination made by Dr. Alexander N. Ruggie, which was the basis of his certificate, was actually made on May 21, 1957, and the "2–22–57" date on his report was inserted in error arising out of the fact that he had *also* made some physical examination of the pilot on that date. This conclusion is supported by the fact that a new certificate was not needed by the pilot until May; there was no need therefor in the preceding February inasmuch as the 24 month period of validity of the prior license had not then expired but was good to June 1, 1957. The doctor's office memoranda, made in the regular course of business, show examinations on *both* dates. The doctor and his secretary both testified to the May 21 examination. The ledger pages and the appointment book pages correspond as to order of patients and recordation of collections from them. This is not the sort of evidence capable of being manufactured.

Dr. Ruggie testified that he first saw Heaney, the pilot, on February 22, 1957, at the outpatient department in the Illinois Masonic Hospital and gave him a general physical checkup. He next saw him on February 28, 1957. The next time was May 21, 1957, for the purpose of filling out the blank in connection with

which he conducted an examination. He further testified the blank was not filled out from information procured at the February examination. The blood pressure figures on the two examinations were different. The doctor also pointed out that the color of Heaney's eyes was noted on the form and he did not have the chart therefor at the hospital but had it in his office. The doctor also performed the "one foot squat" test at the later examination which he had not done at the February examination. The results of the urinalysis were noted differently at the two tests. He stated that the fact that the specific gravity in the two tests was the same was a coincidence but not "remarkable."

Doctor Ruggie's testimony is thus:

"Q. Doctor, when was the first time you had occasion to see the late Warren E. Heaney in a professional capacity?

"A. February 22, 1957. * * * At the out-patient department of the Illinois Masonic Hospital. * * *

"Q. When and where did you next see Mr. Heaney?

"A. He was seen at my office on his next visit * * * February 28, 1957. * * *

"Q. Now, Doctor, when did you next see Mr. Heaney in a professional capacity?

"A. I next saw him on the occasion of the examination to fill out the form for flying.

"Q. When was that?

"A. This apparently was on 5/21/57. * * * At my office."

Further pertinent testimony was as follows:

"Q. Doctor, is it possible that that report was simply filled out from information in your files pertaining to a prior examination, to-wit, the examination of February 22, 1957?

* * * * * *

"A. It has not been filled out from information obtained at any prior examination.

"Q. Doctor, do you specifically recall this examination for this purpose, the CAA examination as a separate and distinct examination?

"Yes, sir."

The doctor further pointed out that in one examination the weight was approximated and in the later one it was specific.

At his deposition, Doctor Ruggie answered negatively when asked if he had a record, directly or specifically, indicating the date on which the CAA examination was conducted, but when asked, "Did you say that *it must have been on May 21, 1957,* because all the other dates on your charge sheet are accounted for in some other fashion?" he answered affirmatively.

When Doctor Peter V. Siegel, Chief of the Aeronautical Certification Division of the Aviation Medical Service of the Federal Aviation Agency, was deposed, he stated that the date on the examination report is inserted by the physician and that is the *only* basis for the Agency's knowledge as to the date on which the examination was made.

In the deposition of John H. Wood, he explained the number "7–063843" as follows: The number "7" indicates the year 1957. The remainder is "a serial number indicating the file number for this particular examination." If the office procedure was up to date, the examination report would be numbered immediately upon receipt. The delay in numbering could "run to more than a week." It was a possibility that the delay in numbering could run as long as a month. He identified the book of the Federal Aviation Agency wherein the numbers were recorded and referred to the page wherein the date "*May 29, 1957*" appeared, and on that page the number 7–063843 was stamped. The numbers were routinely placed on the medical examinations, processing the oldest one received first, in blocks of two hundred. When asked whether there was any doubt in his mind "that this was not stamped on May 29, 1957," he said, "I have no reason to doubt

it." The first and last numbers assigned on May 21 were 7–055401 and 7–057000. The first and last numbers assigned on May 23 were 7–057001 and 7–062800. The next date on which numbers were assigned was May 28, 1957, and the first and last numbers were 7–062801 and 7–063800. On the other hand, numbers stamped around *February 22* were in the 7–034900 series—some 29,000 numbers less than that actually given Heaney's certificate. It is evident to the Court, therefore, that the medical examination report around which this controversy revolves actually was received and processed late in May, thus corroborating the doctor's testimony that the physical examination which he made for the certificate was in May, and not in February. Furthermore, this date coincides with the May expiration date of the previous certificate.

The Court has little quarrel with plaintiff's statement of the following principles of law:

1.  A policy of aircraft liability insurance may validly condition liability coverage on compliance with a governmental regulation, and while noncompliance with such a regulation continues, the insurance is suspended as if it never had been in force.

2.  Where a policy of aircraft liability insurance does not cover a loss or injury because of noncompliance with a governmental regulation, there need be no causal connection between the noncompliance and the loss or injury.

As the Court views the evidence in the instant case, the facts here proved do not bring the controversy within the ambit of either principle. The pilot, as the evidence shows, possessed a required medical certificate, but through the doctor's or his secretary's sheer inadvertence the wrong date of said examination was recorded therein, and since the Regulation heretofore quoted states that "[a] medical certificate becomes valid on the date the physical examination is *con-*

*ducted,"* the doctor's *testimony* of the date of said examination controls. This is not a case, such as plaintiff maintains, where a *governmental record,* i. e., one prepared by the Government itself, is unassailable. This is a document required by the Government but prepared by a private citizen to record facts of which he has knowledge and the Government has none, except as submitted to it.

The right to challenge an erroneous date in a document is supported by treatises and decisions. See 20 American Jurisprudence Evidence, p. 977; Illinois National Bank and Trust Co. v. Holmes, 311 Ill.App. 286, 35 N.E.2d 823; In re Rockford Baseball Club, Inc., 7 Cir., 201 F.2d 685; 18 Illinois Law and Practice Evidence § 271.

The Court concludes, therefore, that plaintiff is liable under the terms of its policy, and that it is not entitled to the declaratory or injunctive relief sought in its complaint. Defendants are directed to submit findings of fact and conclusions of law and final order in conformity herewith within ten days, and to submit a copy thereof to counsel for plaintiff.