**ROYAL INDEMNITY COMPANY,**
a corporation, Plaintiff,

v.

**JOHN F. CAWRSE LUMBER COMPANY, Inc.,** First National Bank of Oregon, Executor of the Estate of John F. Cawrse, Deceased, Daniel Langenfeld, Administrator of the Estate of Linda Langenfeld, Deceased, Defendants.

**Civ. No. 64–201.**

United States District Court
D. Oregon.

April 28, 1965.

Frank Day, Reiter, Day, Anderson & Wall, Portland, Or., for plaintiff.

Jack H. Dunn, Maguire, Shields, Morrison, Bailey & Kester, Portland, Or., for defendants John F. Cawrse Lumber Co., Inc. and the First Nat. Bank of Oregon.

Lyman C. Johnson, Jr., McKay, Panner, Johnson & Marceau, Bend, Or., for Daniel Langenfeld.

KILKENNY, District Judge.

Plaintiff, an insurance company, seeks a declaration of its rights and liabilities under the provisions of a certain insurance policy issued to defendant John F. Cawrse Lumber Co., Inc. on the 1st day of June, 1963. Defendants seek recovery under the policy. Said policy insured defendant corporation against loss by reason of damage to or destruction of a certain Beach 65 aircraft, further insured said defendant against claims for bodily injury or death to persons while passengers in said aircraft, and provided certain medical benefits.

The aircraft was completely destroyed in a crash which occurred on June 10, 1963, near Dayville, Oregon. All persons aboard the plane, including John F. Cawrse, pilot of the plane, and president of defendant company, his wife and daughters, and Linda Langenfeld were killed in the crash. The insured plane, at the time of the accident, was subject to a mortgage in favor of Aero Credit Corporation. The policy included an endorsement which provided that the amount of the loss payable to the insured would be paid to Aero to the extent of its lien on the aircraft, and further provided that the interest of the mortgagee in the policy should not be invalidated by any act or neglect of the insured. Heretofore, plaintiff paid Aero the total due on said mortgage in the sum of $80,636.50.

Although plaintiff required of Cawrse a pilot's qualification report in connection with the policy which was issued to him individually on June 1, 1961, no such report was required in connection with the issuance of the policy to the corporation, John F. Cawrse Lumber Co., Inc. The principal issue for decision is whether the failure of Cawrse to obtain a medical certificate as required by the Federal Aviation Regulations invalidated the policy. Plaintiff contends that it does, defendants contend that a valid pilot's certificate is all that is required under the express provisions of the policy.

■ The policy provided that it applied to the aircraft in flight only while being operated by a pilot holding a valid and current private or commercial pilot certificate.[1] Plaintiff insists that this language, includes, by implication, the requirement of the Federal Aviation Regulations that no person may act as a pilot in command of an aircraft under a certificate issued to him unless he has in his personal possession an appropriate current medical certificate.[2] The last medical certificate issued to the pilot expired some time prior to the accident. The record discloses and the plaintiff must concede that the pilot was in good health. That fact, however, is of little, if any, significance. The record also discloses, and the plaintiff concedes that Cawrse possessed a pilot's certificate issued pursuant to the provisions of the

Federal Aviation Regulations.[3] Throughout the various subdivisions of § 61.3, the regulations distinguish between a *current pilot's certificate* and a *current medical certificate,* even to the point of requiring production of the pilot's certificate for inspection, while no such requirement is made on the medical certificate.[4] It is crystal clear that the agency promulgating these regulations intended the phrase "current pilot's certificate" to have a meaning entirely separate and distinct from the phrase "current medical certificate." Confirming this conclusion is the fact that the agency, by amendment of August 17, 1963, after the accident, saw fit to require the pilot to produce "either or both" of these certificates for inspection. That the two certificates cannot be treated as the same, or one including the other, is further demonstrated by the fact that the form of pilot's certificate issued to Cawrse has no definite expiration date,[5] while the medical certificate has a definite expiration date.[6]

■ An analysis of the fundamental rules of construction on insurance contracts will pinpoint the error of plaintiff's contentions. This being a diversity case, the court must apply the law of the state of Oregon. Erie R. R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); Gilkey v. Andrew Weir Ins. Co., 291 F.2d 132 (9th Cir. 1961). The policy provision under scrutiny, being in the na-

---

1. ENDORSEMENT NO. 5.
   "Pilots—This policy applies when the aircraft is in flight only while being operated by any pilot holding a valid and current Private or Commercial pilot certificate, * * *"

2. 14 C.F.R. § 61.3(c) (1963).
   "(c) *Medical certificate.* Except for glider pilots piloting gliders, no person may act as pilot in command of an aircraft under a certificate issued to him under this part unless he has in his personal possession an appropriate current medical certificate * * *."

3. 14 C.F.R. § 61.3(a) (1963).
   "(a) *Pilot certificate.* No person may, within the United States, act as pilot

in command of a civil aircraft of United States registry unless he has in his personal possession a *current pilot certificate* * * *." (Emphasis supplied.)

4. 14 C.F.R. § 61.3(d) (1963).
   "(d) *Inspection of certificate.* Each person who holds a pilot certificate described in paragraph (a) or (b) of this section shall present it for inspection upon the request of the Administrator * * *."

5. 14 C.F.R. § 61.9 (1963).

6. 14 C.F.R. § 61.43 (1963).

ture of an exclusion, must be strictly construed against the insurance company. I–L Logging Co. v. Manufacturers & Wholesalers Indemn. Exch., 202 Or. 277, 273 P.2d 212, 275 P.2d 226 (1954). If the language selected by the insurance company in framing the provisions of its policy is susceptible of more than one meaning, the contract must be most strictly construed against the company. Roberts v. Union Ins. Soc'y., 215 Or. 183, 332 P.2d 600 (1958) ; Farmers Mut. Ins. Co. v. United Pac. Ins. Co., 206 Or. 298, 292 P.2d 492 (1956).

■ An endorsement to an insurance contract, to the extent of the endorsement, modifies the terms and conditions of the original contract. Close-Smith v. Conley, 230 F.Supp. 411 (D. Or.1964). Any uncertainty in the meaning of a policy provision is to be resolved against the party responsible for the use of the questioned language. Herrold v. Hartley, 144 Or. 368, 24 P.2d 338 (1963) ; Grace v. American Central Ins. Co., 109 U.S. 278, 3 S.Ct. 207, 27 L.Ed. 932 (1883). Where technical words, such as "current pilot certificate" have a settled meaning or definition, the use of the words without an indication of an intention to give them a new significance is an adoption of their accepted meaning at the time when used. United States v. Trans-Missouri Freight Assn., 166 U.S. 290, 17 S.Ct. 540, 41 L.Ed. 1007 (1897) ; Carter v. Liquid Carbonic Pac. Corp., 97 F.2d 1 (9th Cir. 1938) ; Keck v. United States, 172 U.S. 434, 19 S.Ct. 254, 43 L.Ed. 505 (1899).

■ It is my considered judgment that if the plaintiff intended to include a requirement with reference to a "current medical certificate," it should have included such a provision. This conclusion is supported by an avalanche of authorities, including United States v. Eagle Star Ins. Co., 196 F.2d 317 (9th Cir. 1952), rev'd on other grounds on rehearing, 201 F.2d 764 (9th Cir. 1953), where one condition of the policy was that the plane "shall have a valid and current air worthiness certificate issued by the Civil Aeronautics Authority." The insurance company, in that case, contended that overloading the plane by approximately twenty-five percent was in direct violation of aviation regulations and that to operate the plane under such conditions invalidated the certificate of air worthiness required by the policy. The court rejected this argument with the obvious answer that the policy contained no such exclusion.[7] Where there is a specific exception or reservation in the contract, it is presumed that no other exception or reservation was intended. Fendall v. Miller, 99 Or. 610, 196 P. 381 (1921).

■ Another thrust of the plaintiff's argument is that the policy required the plane be operated by an "approved" pilot, i. e., one holding a valid current pilot certificate, and that such a pilot, by implication, was required to have a current medical certificate. Conceding, as the defendants must, that Cawrse did not have a current medical certificate, as required by the regulations, at the time of the accident, that fact, in and of itself, does not invalidate the policy. Conceding, further, as argued by the plaintiff, that the applicable law is incorporated in and becomes a part of each insurance contract, United States Fidelity & Guaranty Co. v. Long, 214 F.Supp. 307 (D.Or.1963) ; Giustina v. United States, 190 F.Supp. 303 (D.Or. 1960), aff'd 313 F.2d 710 (9th Cir. 1963), we must also remember that it is the fundamental right of the insurer to decide what it will and what it will not insure against, providing that the provision is not against public policy. Roberts v. Union Ins. Soc'y., supra; Maryland Casualty Co. v. Morrison, 151 F.2d 772 (10th Cir. 1946), cert. denied, 327 U.S. 783, 66 S.Ct. 684, 90 L.Ed. 1010

7. "We cannot come to any such conclusion without rewriting the policy. Had it been intended to make this first condition one which prohibited overloading or other violations of applicable regulations, it would have been a simple matter to find appropriate words to say so." 196 F.2d at 321.

(1946); Hawkeye-Security Ins. Co. v. Myers, 210 F.2d 890 (7th Cir. 1954). That the failure to have the indicated medical certificate would not be in conflict with the public policy of the state of Oregon is made evident by the decision of the Oregon Supreme Court in Johnson v. Travelers' Ins. Co., 147 Or. 345, 32 F.2d 587 (1954), where that Court enforced the provisions of a public liability insurance policy, even though the driver of the automobile did not have a driver's license as required by Oregon law. Already, I have emphasized that the requirement of a current medical certificate was not of sufficient importance to the agency to suggest its production for inspection until sometime after this accident. Moreover, a medical examination was of such little concern to the plaintiff that it made only one inquiry in connection with the issuance of three policies and that was prior to the issue of the first policy to the pilot individually.

We must not confuse the language of this endorsement with broad exclusions, limitations or exceptions, employed in some policies, such as "operation in violation of law," or "operation in violation of regulations." Bruce v. Lumbermen's Mut. Cas. Co., 127 F.Supp. 124 (E.D.N.C.1954), aff'd. 222 F.2d 642 (4th Cir. 1955). Without question, the plaintiff could have selected and used that language in the policy. It chose, however, to be precise in the language used in the endorsement and limit the pilot's qualifications to a valid current operator's license. Such language must be strictly construed and by no stretch of the imagination can this language be enlarged to include "a valid medical certificate" or a "violation of law or regulations."

In the construction of an insurance policy, that interpretation must be adopted which is most favorable to the insured. Jaloff v. United Auto Indemn. Exch., 120 Or. 381, 250 P. 717 (1926).

Of more than ordinary significance, on the probe to discover the true intent of the parties, is the action of the plaintiff in eliminating from the provisions of the original policy, the only language that specifically dealt with an expired certificate or the operation of the aircraft by a pilot in violation of his civil aeronautics certificate.[8] Words deleted from a contract may be the strongest evidence of the intention of the parties. One Thousand Bags of Sugar v. Harrison, 53 F. 828 (3d Cir. 1893). Substituted for the eliminated provisions were certain general clauses with reference to an approved pilot.[9] An *approved* pilot,

---

8. ENDORSEMENT NO. 6.
 "A. Exclusions A4 and B4 are eliminated in their entirety * * * (Coverages thus eliminated):
  * * * * *
 "A. 4. (d) While the aircraft is being operated by any person other than the pilot or pilots approved hereunder or by a pilot otherwise approved but whose certificate has been restricted, revoked or suspended, or has expired, except that mechanics and pilots certified by the Civil Aeronautics Authority may when so authorized by the insured operate the aircraft on ground or water;
  * * * * *
 "B. 4. to any insured:
  * * * * *
 "(d) who operates or permits the operation of the aircraft by a pilot in vio-

lation of his Civil Aeronautics Certificate, or in violation of the Airworthiness Certificate of the aircraft; * * *."

9. "A. Exclusions A4 and B4 are eliminated in their entirety and the following substituted therefor:
 "A4—To loss while the aircraft is in flight by or with the permission of the insured (if the insured is a corporation or partnership, then by or with the permission of an executive officer or partner thereof) and during or as a result of its operation:
 "(a) While the aircraft is being operated by any person other than the pilot or pilots approved hereunder.
 "(b) For instructional purposes, other than instruction of pilots approved here-

as mentioned in the amended exclusions, can refer to no one other than a pilot holding a valid and current private or commercial pilot's certificate mentioned in Endorsement No. 5.

■■ True enough, the word "valid" means legal or lawful. Even so, I do not believe that this descriptive word adds anything to the meaning of *current pilot's certificate*. The certificate was legal and valid in and of itself and without reference to the medical certificate. The phrase *current pilot's certificate* would imply a valid certificate. The certificate either exists or it does not exist. If there is ambiguity in the phrase, the burden of enlightenment falls on the insurer. Its only answer is that by implication the requirement of a valid medical certificate should be read into the language *current pilot's certificate*. I am drawn to the conclusion that nothing less than rewriting the policy would accomplish that result.

Plaintiff might have been on solid ground if it had retained the exclusions originally printed in the policy. That result might follow in the wake of the decision in Ohio Casualty Insurance Co. v. Heaney, 229 F.Supp. 30 (N.D.Ill.1964), where the court, without explanation, assumed that a pilot's medical certificate was included in the phrase "proper certificates" as required by the Civil Aeronautics Authority. At any rate, the significant language was deliberately eliminated from the policy under study, so the decision should not be dignified by further discussion.

■■ The issue of fraud raised by the plaintiff is wholly without support in the record. While the misrepresentation of a material fact in an application for insurance constitutes fraud and a forfeiture of the policy will result therefrom, there is no evidence of a misrepresenta-

tion. The only application ever filed by the pilot was not made in connection with the issuance of the present policy, nor was there anything untruthful or misrepresented in that application. No application was required by the company prior to the issuance of the policy under scrutiny. I will not lend substance to the charge by a further analysis or discussion.

All of plaintiff's authorities have been examined. None of them are at variance with my conclusions on the facts as I find them. On the issue to be tried, as agreed by counsel at the commencement of the trial, I find under all of the evidence in the case, that the pilot's failure to have a current medical certificate, at the time of the accident, did not invalidate the policy.

On the record in this case, the defendants are entitled to judgment against plaintiff for the sum of $69,363.50, the balance owing on the loss of the aircraft, the further sum of $4,000.00 under the medical pay portion of the policy, the further sum of $8,000.00 expended in settling the bodily injury cases that have been settled, the further sum of $3,500.00 attorney fees on the settlement of the personal injury cases, and the further sum of $427.22 costs and expenses advanced in connection with the settlement of those cases, less the sum of $250.00, the deductible amount of the policy. Additionally, I find that the sum of $17,500.00 is a reasonable amount to be allowed as attorney fees in connection with the prosecution of the defendants' claims.

The agreed facts in the pre-trial order and the stipulations of the parties, together with the facts found in the foregoing opinion shall serve as my findings and conclusions. Counsel for the defendants shall draft, serve and present an appropriate judgment.

under, unless such purposes are approved in the Declarations.
"B4—To any insured:
"(a) Who permits the operation of the aircraft by any person other than the pilot or pilots approved hereunder.

"(b) Who operates or permits the operation of the aircraft for instructional purposes, other than instruction of pilots approved hereunder, unless such purposes are approved in the Declarations."