[Civ. No. 31126. First Dist., Div. Two. Mar. 27, 1974.]

JAMES W. WOODS, Plaintiff and Respondent, v.
INSURANCE COMPANY OF NORTH AMERICA,
Defendant and Appellant.

## COUNSEL

Popelka, Allard, Humphreys, Williams & Stenberg and Dean E. Stenberg for Defendant and Appellant.

Theodore W. Wolcott, Cartwright, Saroyan, Martin & Sucherman and Robert E. Cartwright for Plaintiff and Respondent.

## OPINION

**TAYLOR, P. J.**—On this appeal by Insurance Company of North America, the insurer, from a judgment in favor of James W. Woods, the injured passenger, declaring that its aircraft liability policy was in full force and effect at the time of the accident, the only question is the construction of the phrase "properly certificated and rated for the flight," in Endorsement No. 2. For the reasons set forth below, we have concluded that the judgment must be affirmed.

The facts are not in dispute and were found by the trial court as follows: On May 16, 1962, the insurer issued to the owner, Stephen W. Johnson, a policy providing public liability coverage for injuries sustained by a

person in the operation of the insured aircraft, an Aero 560 Commander. On September 25, 1962, the passenger was injured in a crash that occurred while the aircraft was piloted by John Gregg with the knowledge and consent of the owner. At the time of the accident, Gregg was an experienced pilot, with a current Class 3 pilot license that qualified him to fly the multi-engine aircraft involved in the accident. Gregg had .12 years' flying experience and had logged 8,500 hours of total flight time, including 2,000 hours of flight time in Aero Commander aircraft. However, unknown to Gregg or his passenger, Gregg's medical certificate had expired about 25 days before the accident.[1] Gregg's failure to renew his medical certificate had nothing to do with the accident and was mere inadvertence on his part; at all times before and after the accident, Gregg was in excellent physical health and condition and passed all prior and subsequent medical examinations.

The passenger filed his action for personal injuries sustained against Gregg and the insurer.[2] The insurer refused to defend on grounds of no coverage. Gregg defaulted and the passenger subsequently commenced this action for a summary judgment against the insurer.

The largely printed policy contained Exclusion (a), set forth in full below,[3] which was eliminated from the policy by Endorsement No. 1, that provided:

---

[1] Under the then applicable regulations, 14 Code of Federal Regulations, section 61.43, subdivision (a)(3), the medical certificate expired ". . . at the end of the last day . . . of the 24th month after the month in which it was issued . . ."

[2] A prior property damage action by the owner against the insurer in the federal district court (N.D. Cal., So. Div., No. 41644) that resulted in a judgment in favor of the insurer, was held not res adjudicata in the instant action between different parties.

[3] "This Policy does not apply:
"(a) Under Coverages A, B and C, while the aircraft is in flight under any of the following circumstances with the consent and knowledge of the insured or any executive officer or partner thereof;
"Under Coverages D, E, F, G and H, to any insured while the aircraft is being operated under any of the following circumstances with the knowledge and consent of such insured or of any executive officer or partner thereof;
"(1) in violation of the applicable airworthiness certificate as approved by the Federal Aviation Agency,
"(2) under circumstances requiring a special permit or waiver from the Federal Aviation Agency, even though such waiver or permit is granted unless this policy is endorsed to cover such operations,
"(3) in violation of Federal Regulations for Civil Aviation applicable to:
"(a) Night Flying.
"(b) Minimum Safe Altitudes,
"(c) Student Instruction,
"(d) Maintenance, Alterations, Repairs or Inspection,

"Federal Regulations Endorsement

"In *consideration of the premium* for which this policy is written, it is agreed that paragraphs (1), (2), (3) and (4) of Exclusion (a) *are deleted in their entirety.*

"Nothing herein contained shall vary, alter or extend any provision or condition of the policy other than as above stated." (Italics supplied.)

 This controversy concerns the proper construction and meaning of typewritten Endorsement No. 2 that provided: "It is agreed that coverage provided by this policy while the aircraft is in flight shall not apply unless the pilot in command of the aircraft is Sehoy Dickson Turner, Maurice Smith or any other private or commercial pilot *who is properly certificated and rated for the flight and the aircraft* and has logged a minimum of 1,500 first pilot hours of which at least 500 hours have been in multi-engine aircraft and at least 25 hours in Aero Commander aircraft.

"Nothing herein contained shall vary, alter or extend any provision or condition of the policy other than as above stated." (Italics supplied.)

The insurer maintains that the phrase "properly certificated and rated for the flight and the aircraft" clearly includes the current medical certificate required by the regulations of the Federal Aviation Agency, set forth below.[4] In sum, the insurer argues that since Gregg did not have the current medical certificate required by FAA regulations, set forth above, in addition to his current pilot's license, the pilot in command of the Aero Commander was not "properly certificated and rated for the flight," and the coverages afforded under its policy were never in effect. We cannot agree.

---

"(e) Instrument Flying,
"(f) Acrobatic Flying,
"(4) *by any person not properly certificated by the required governmental authority for such operation, or in violation of such certificate during such operation.*" (Italics supplied.)

[4] 14 Code of Federal Regulations, section 61.3(a), so far as pertinent, provides: "*Pilot certificate.* No person may act as a pilot in command or in any other capacity as a . . . pilot flight crewmember of a civil aircraft of U.S. registry, *unless he has in his personal possession a current pilot certificate issued to him under this part.*" (Italics supplied.)

14 Code of Federal Regulations, section 61.3(c), so far as pertinent, provides: "*Medical certificate.* Except for glider pilots piloting gliders, no person may act as pilot in command or in any other capacity as a required pilot flight crewmember of an aircraft under a certificate issued to him under this part, *unless he has in his personal possession an appropriate current medical certificate issued under Part 67 of this chapter.*" (Italics supplied.)

The insurer might have been on more solid ground if it had retained Exclusion (a) originally printed in the policy with its subparagraph (4) (quoted in fn. 3 above) that specifically referred "to any person not properly certificated by the required governmental authority." However, since in consideration of the payment of an additional premium, Exclusion (a) was deleted in its entirety by Endorsement No. 1, we cannot agree with the insurer that Endorsement No. 2 (executed at the same time as the policy and Endorsement No. 1) restored as to pilots in command of the aircrafts the exclusion of paragraph (4) of Exclusion (a).

Furthermore, we note while two separate documents are required by the FAA, the pilot's certificate or license and the medical certificate, the insurer chose to use in both Endorsements 1 and 2 the ambiguous term "properly certificated." If that term included the meaning that the pilot must hold in addition to the license a current medical certificate, the insurer should have specifically so stated (cf. *Berlanti* v. *Underwriters at Lloyd's London*, N.Y. S.Ct. November 30, 1964; 9 Avi. Cas. 17, 420), wherein the court so stated, after holding that the phrase "flown by a licensed pilot" did not also include the current medical certificate required by the FAA regulations.[5]

■ It is axiomatic that ambiguous terms used in an insurance policy are construed against the draftsman, and that exclusions must be strictly construed against the insurer (*Roach* v. *Churchman* (8th Cir. 1970) 431 F.2d 849; *Wildman* v. *Government Employees' Ins. Co.*, 48 Cal.2d 31 [307 P.2d 359]; Civ. Code, §§ 1644, 1645). ■ Furthermore, as

[5]The insurer urges that *Berlanti* as a decision of a lower court is not of sufficient dignity to be of precedential value to this court. Neither this court (nor any other) can afford to ignore a well reasoned written decision of any other court on a similar matter. The insurer also erroneously argues that the controlling authority is *Bequette* v. *National Insurance Underwriters, Inc.* (9th Cir. 1970) 429 F.2d 896. In *Bequette*, however, the exclusion provided that the policy applied only while being operated by the pilot named or designated "while holding a pilot certificate . . . with appropriate ratings required for the flight involved." The pilot did not have the required rating to carry passengers and the court, finding no ambiguity, upheld the exclusion. Other authorities cited by the insurer are equally inapposite as they either involved clear policy violations (*Underwriters at Lloyd's of London* v. *Cordova Airlines* (9th Cir. 1960) 283 F.2d 659; *Roberts* v. *Underwriters at Lloyd's London* (D.Idaho 1961) 195 F.Supp. 168; *Lineas Aereas Colombianas Exp.* v. *Travelers Fire I. Co.* (5th Cir. 1958) 257 F.2d 150; *Littrall* v. *Indemnity Insurance Co. of North America* (7th Cir. 1962) 300 F.2d 340); or other issues as in *Foster* v. *United States Aviation Underwriters, Inc.* (D.C.Mun.App. 1968) 241 A.2d 914 (where the question was whether the agent had misrepresented the coverage); *Des Marais* v. *Thomas* (Sup.) 147 N.Y.S.2d 223, affirmed 1 App.Div.2d 1002 [153 N.Y.S.2d 532] (holding that the "pilot" as distinguished from the co-pilot had to be specifically named); and *Sabella* v. *Wisler*, 59 Cal.2d 21 [27 Cal.Rptr. 689, 377 P.2d 889] (solely concerned with questions of proximate cause, not in issue here).

noted in *Royal Indemnity Co.* v. *John F. Cawrse Lumber Co.* (D.Ore. 1965) 245 F.Supp. 707, at page 711: "Of more than ordinary significance, on the probe to discover the true intent of the parties, is the action of the plaintiff in eliminating from the provisions of the original policy, the only language that specifically dealt with an expired certificate or the operation of the aircraft by a pilot in violation of his civil aeronautics certificate. Words deleted from a contract may be the strongest evidence of the intention of the parties. One Thousand Bags of Sugar v. Harrison, 53 F. 828 (3d Cir. 1893)."

In *Royal Indemnity*, as here, the policy applied to the aircraft in flight only while being operated by a pilot holding a valid and current private or commercial pilot certificate, the pilot had such a certificate but the last medical certificate issued to him had expired before the accident, and Endorsement No. 6 of the policy (like Endorsement No. 1 here) eliminated an exclusion that specifically related to "approved" pilots whose "certificate has been restricted, revoked, or suspended or has expired" (fn. 8 at p. 711). The court in construing the entire policy in favor of the insured and holding that the elimination of the exclusion broadened the coverage of the policy, said at page 711: "We must not confuse the language of this endorsement with broad exclusions, limitations or exceptions, employed in some policies, such as 'operation in violation of law,' or 'operation in violation of regulations.' [Citation.] Without question, the plaintiff could have selected and used that language in the policy. It chose, however, to be precise in the language used in the endorsement and limit the pilot's qualifications to a valid current operator's license. Such language must be strictly construed and by no stretch of the imagination can this language be enlarged to include 'a valid medical certificate' or a 'violation of law or regulations.'"

In rejecting the insurer's contention that the controlling language was a general provision referring to an "approved pilot" with a valid "current pilot certificate," the court said at page 712: "True enough, the word 'valid' means legal or lawful. Even so, I do not believe that this descriptive word adds anything to the meaning of *current pilot's certificate.* The certificate was legal and valid in and of itself and without reference to the medical certificate. The phrase *current pilot's certificate* would imply a valid certificate. The certificate either exists or its does not exist. If there is ambiguity in the phrase, the burden of enlightenment falls on the insurer. Its only answer is that by implication the requirement of a valid medical certificate should be read into the language *current pilot's certificate.* I am drawn to the conclusion that nothing less than rewriting the policy would accomplish that result."

Similarly, in *Ranger Insurance Company* v. *Culberson* (5th Cir. 1971) 454 F.2d 857, the court specifically noted the broadening effect on coverage by the deletion of a standard exclusion, and held that a person may be insured against activities otherwise prohibited by the federal air regulations. We think the following reasoning of *Ranger,* at pages 864 and 865, is particularly applicable here to the insurer's argument as to the broad reading of the terms "properly certificated" of Endorsement No. 2: "If Ranger wishes us to read the general term 'proper' as requiring that *any* transgression of an FAA regulation should operate as an 'impropriety' of sufficient intent to suspend coverage, then our declining to read a general word so broadly should come as no surprise, for we have declined to do so before. [Citations.] Words of exclusion in insurance policies should be given small tolerance when insurance companies choose to use words of imprecision. Indeed, the logic of Ranger's argument for exclusion would be to engraft as exceptions to coverage the violation of every proscribed peccadillo of FAA regulations. The cases cited by Ranger in its support go to the heart of coverage, and it cannot be that every impaired capillary blocks coverage. Almost all airplane accidents involve some violation of the Federal Aviation Regulations. Even 'careless flying,' or simple negligence, is a violation. [Citation.] The *Roach* case construed a similar argument:

" 'Applying this analysis, the insuring agreements become illusory in effect since few accidents occur without the aircraft's owner or pilot violating one or more of the very detailed regulations promulgated by the Federal Aviation Administration.' 431 F.2d at 853.

"To read into the general word 'proper' all violations of the regulations would be to hoodwink most insurance purchasers, for it would make a nullity of most coverage. Purchasers believe, and with good reason, that they have bought insurance to protect themselves from precisely those degrees of negligence or outright carlessness that FAA regulations might condemn. Insurance is procured to protect the violator, and every violation cannot nullify coverage. Any intent to use general words as a blunderbuss and every single regulation as birdshot cannot be reasonably upheld. If an insurance company has an intent to deny coverage in a specific set of circumstances, then it should so delineate. [Citation.]"

In affirming the lower court's decision in *Ranger,* the Fifth Circuit (at pp. 863 and 864) cited with approval *Roach* v. *Churchman* (8th Cir. 1970) 431 F.2d 849, where coverage was sustained notwithstanding the pilot's violation of the federal aviation regulation governing night flight with passengers without the required experience and a policy provision exclud-

ing coverage where the pilot violated his FAA certificate. In reversing the lower court, the Eighth Circuit said at page 851: "In our view, the trial court gave these questioned exclusionary provisions an overbroad construction contrary to the well-settled general rule that exceptions, *limitations and exclusions to insuring agreements require a narrow construction on the theory that the insurer, having affirmatively expressed coverage through broad promises, assumes a duty to define any limitations upon that coverage in clear and explicit terms.* This court follows that rule . . . ." (Italics ours.)

In response to an argument similar to that raised here by the insurer (namely, that the pilot's technical violation of the FAA regulation requiring a current medical certificate prevented the policy coverage from going into effect), the Eighth Circuit, at page 852, distinguished between the FAA's operating safety rules, such as the one relating to night flights, and conditions that limited the pilot's certificate, and held at pages 852 and 853: "While the pilot's act of carrying a passenger at night in apparent contravention of § 61.47 may have been negligent or even intentional, it did not violate any express term of his pilot's certificate."

"Applying this analysis, the insuring agreements become illusory in effect since few accidents occur without the aircraft's owner or pilot violating one or more of the very detailed regulations promulgated by the Federal Aviation Administration." (P. 853.)

This analysis is in accord with the distinctions made in the FAA regulations between a current pilot's certificate and a current medical certificate, noted in *Royal Indemnity, supra,* at page 709. As therein noted, while the pilot's certificate had no specific expiration date, the medical certificate had a definite expiration date. This distinction was also noted in *Berlanti, supra,* where the court held that expiration of the medical certificate regulation could not automatically revoke[6] a valid pilot's certificate, since the applicable law required notice and a hearing prior to the revocation of the pilot's certificate. Also in accord is *Insurance Company of North America* v. *Maurer* (Tex. 1974) 505 S.W.2d 931, where the court, following the reasoning of the *Roach* and *Berlanti* cases, held that the phrase "valid pilot's certificate with ratings and certificates appropriate for the flight . . . as required by the Federal Aviation Administration" did not also require a valid medical certificate.

Thus, it follows that the term "properly certificated" as used in Endorsement No. 2 of the subject policy does not clearly or automatically exclude

---

[6]The parties herein so agreed below.

coverage because Gregg's medical certificate had expired before the accident in which Woods was injured. Keeping in mind the distinction between the FAA regulations requirements of a current medical certificate and pilot's license or certificate, a reading of the entire policy here in issue readily indicates that Endorsements No. 1 and No. 2 dealt with two separate subjects: Endorsement No. 1, entitled "Federal Regulations Endorsement" related to the elimination of the specific FAA regulations mentioned in Exclusion (a),[7] e.g., airworthiness, night flying, etc. When Endorsement No. 2 is read in its entirety and in context with the language of Exclusion (a), it is readily apparent that Endorsement No. 2 deals specifically with the training and experience of the pilots who are to command the insured aircraft. Significantly, the endorsement refers to the specifically named pilots[8] without any qualifications as to their experience, rating or certification. The endorsement then continues to spell out for unnamed pilots in command the qualification of "properly certified and rated" and sets forth the minimum number of pilot hours required. In this context, "properly certified and rated" when read with the immediately following phrase "for the flight and aircraft" can only reasonably be interpreted to refer to the pilot's flight proficiency and skill. In the FAA regulations, the term "rating" refers specifically to the types of aircraft, or equipment category or a class or a particular skill such as instrument rating, multi-engine rating, etc.[9] Thus, the term "properly certificated" can only reasonably mean the pilot's certificate and license; it cannot reasonably be construed to also include the separate pilot's medical certificate.[10] We think the

---

[7]The fact that the terms "properly certificated" as used in subparagraph (4) of Exclusion (a) are subject to the same ambiguity as that phrase in Endorsement No. 2 need not further concern us here since the parties agree that all of the provisions of Exclusion (a) were eliminated from the policy by Endorsement 1.

[8]Originally, the named pilots were Sehoy Dickson Turner and Maurice Smith; Stephen H. Johnson was added as a named approved pilot under Endorsement No. 2 by Endorsement No. 7 on June 21, 1962.

[9]For example, 14 Code of Federal Regulations, section 61.3(f) refers separately to instrument, helicopter and airship rating; section 61.1 refers to aircraft and instrument ratings; section 61.5 reads: "(a) An application for a certificate and rating, or for an additional rating, under this part is made on a form and in a manner prescribed by the Administration.

"(b) An applicant who meets the requirements of this part is entitled to an appropriate pilot or flight instructor *certificate with appropriate aircraft ratings. Additional aircraft category, class, and type ratings, and instrument ratings* for which the applicant is qualified, *are added to his certificate*." (Italics ours.)

[10]We are aware that in *Ohio Casualty Insurance Company* v. *Heaney* (N.D.Ill. 1964) 229 F.Supp. 30, the court assumed, without explanation, that a pilot's medical certificate was included in the phrase "proper certificate(s) as required by the Civil Aeronautics Authority." In the absence of any discussion concerning the proper construction of policy provisions since the court held the exclusion inapplicable (as

trial court properly concluded that the insurer's policy afforded coverage for the personal injuries sustained by the passenger.

. As the United States Circuit Court so aptly said in *Ranger, supra,* at page 867: "The clumps of words in an insurance policy might seem like so much insignificant jabberwocky to those who follow insurance law, perhaps worse to those who only stumble into the field. Jabberwocky it might be. Insignificant it is not. On those clumps of words rests the intent of the insurance coverage. Some insurance policies, their riders, exclusions, folds-in and folds-out, and appendages, are festooned in such ways that mechanical knowledge is a help in unfolding and laying them out so that the policies are in physically readable form. An insured, who is presented with forms and discussion in widely varying degrees of clarity, is entitled to know the precise nature of the insurance coverage that his premiums are buying. It is all too clear that contract language, while at times a great explainer, is at times a great obscurer. It is incumbent upon insurance companies to state clearly the perimeters of their coverage to those who entrust their security to them." In the hope that that clarity might eventually come to pass, we affirm this judgment.

Kane, J., and Rouse, J., concurred.

---

a typographical error showed the pilot to have a valid certificate), we need not dignify *Heaney* with further discussion (cf. *Royal Indemnity Co.* v. *John F. Cawrse Lumber Co.,* 245 F.Supp. 707, at p. 710).