[Civ. No. 40564. First Dist., Div. One. Nov. 8, 1978.]

NATIONAL INDEMNITY COMPANY, Plaintiff and Appellant, v. FLOYD A. DEMANES, as Special Administrator, etc., et al., Defendants and Appellants.

## COUNSEL

Ross, Fields & Zax, Arnold L. Ross and Mark Bernstein for Plaintiff and Appellant.

Floyd A. Demanes, in pro. per., Edward Cohen, Arnold I. Bennigson and Hays, Sanford & Latta for Defendants and Appellants.

## OPINION

**DEVINE, J.**\*—National Indemnity Company has received a declaratory judgment ruling that it has no duty to defend or to indemnify the special administratrix of the estate of Wilburn Eugene Walker, deceased, on an

---

\*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.

aircraft liability insurance policy. The judgment is the subject of this appeal.

On May 14, 1974, Wilburn Eugene Walker, coowner with Borne of a Piper plane, took off as pilot from an airfield at Lake Tahoe while Borne was riding with two other persons as a back seat passenger, although Borne was a licensed pilot. The plane crashed to the field, killing all four. Walker was a licensed pilot, but the medical certificate which he had held when the policy was purchased on December 10, 1973, had expired on February 28, 1974. There was no evidence or assertion that the accident had been caused by ill health of Walker. A lawsuit alleging negligence on the part of Walker was filed upon claim against his estate by Holdsclaw, the special administratrix of Borne's estate.

National Indemnity contends that it has no responsibility on two grounds: first, that there is an exclusion because of Walker's lack of a valid medical certificate and second, that the liability policy does not cover injury to or death of "named insureds," of whom Borne was one, or derivately, their heirs. The trial court agreed with the insurer's first contention but disagreed with the second. In our judgment neither contention of the insurer is valid.

### The Medical Certificate Issue

■ Among the exclusions set forth in a paragraph of the policy there is this: "*This Policy does not apply* : . . . to any occurrence or to any loss or damage occurring while the aircraft is operated in flight by other than the pilot or pilots set forth under Item 7 of the Declarations; . . ." And in Endorsement A (which was attached to the policy at the time of its issue), there appears this: "It is understood and agreed that this policy shall not apply under Coverages A, B, C, D, E, or G, unless the aircraft is being operated by the person or persons Named specifically in item 7 of the Declarations, Pilot Clause."[1]

The Pilot Clause reads: "7. PILOT CLAUSE: Only the following pilot or pilots holding valid and effective pilot and medical certificates with ratings as required by the Federal Aviation Administration for the flight involved will operate the aircraft in flight: W. E. WALKER, A PRIVATE PILOT, OR C. F. BORNE, A PRIVATE PILOT, OR PRIVATE OR COMMERCIAL PILOTS WITH A MINIMUM OF 500 TOTAL LOGGED HOURS INCLUDING 150

[1]Coverage A applies to personal injury and death claims.

Hours in Retractable Gear Aircraft and a Check Out in Make and Model by an FAA Certified Flight Instructor."

Thus, the exclusions clause itself does not rule out coverage in this case. It does refer to exclusion while the plane is in flight by *"other than"* the pilot or pilots "set forth" under item 7. But Borne was *not* "other than" the two "set forth" pilots. The exclusion does not refer to the qualifications of the pilots, but to their identities. The indorsement even more pointedly refers to the limitation of coverage to operation by the pilots *"Named"* in the pilot clause; of course, Borne was named therein. If there be conflict between the indorsement and the body of the policy, the former would prevail. Actually, both refer to named persons and to nothing more. As one commentator has put it: "Courts have often reasoned that if the insurance company intends to exclude coverage when the pilot does not have a current medical certificate, why not at least use those words? It has been effectively argued, 'if that's what the insurance company meant, it was easy enough to say, and since it didn't, it obviously wasn't intended at the time the policy was written.' " (Davis, *Aviation Insurance Exclusions*, 37 J. Air L.Com. 337, 338.)

In *Ranger Insurance Company* v. *Culberson*, 454 F.2d 857, 866, the very phrase that is before us, "other than the pilot or pilots set forth under Item 7 of the Declarations [the Pilot Clause]" was held to require simply that the airplane be operated by one named in the Pilot Clause; the purported exclusion omitted any reference to or incorporation of the printed part of the Pilot Clause. In *Woods* v. *Insurance Co. of North America*, 38 Cal.App.3d 144 [113 Cal.Rptr. 82, 72 A.L.R.3d 515], *Ranger* was cited with approval of its narrow construction of limitations and exclusions,[2] and it was held that the words "properly certificated and rated" were related to the pilot's proficiency and skill, and did not include possession by the pilot of a current medical certificate. The court pointed to the difference between the pilot's certificate which can be revoked only upon notice and hearing and the medical certificate which simply expires. Of course, the policy in the case before us does refer to a medical certificate, and that in *Woods* did not; but the same proposition underlies both: the insurer could have stated the exclusion clearly, it did not do so; the law requires clear statement, wherefore the "exclusion" is ineffectual.[3]

[2]Accord: *Wildman* v. *Government Employees' Ins. Co.*, 48 Cal.2d 31 [307 P.2d 359]; *Healy Tibbitts Constr. Co.* v. *Employers' Surplus Lines Ins. Co.*, 72 Cal.App.3d 741, 749 [140 Cal.Rptr. 375], and cases cited therein.

[3]Cases on both sides on the subject are in Annotation, 72 A.L.R.3d 525, following the principal *Woods* case at page 515.

But there are additional reasons for holding the purported exclusion by indirection to be ineffective. When application for the policy was made by telephone, the agent required and received from one of the owners (and pilots) of the aircraft the names of the two, their ratings, their total logged hours, their hours with this model, their hours with retractable gear aircraft, and the fact that the plane had been in an accident in Canada because of oil line failure. The application was considered, then a binder was issued. In it, there is no mention of a medical certificate. The two purchasers, if they read the binder, would know nothing of the attempted exclusion which was to follow. But when they did receive the policy, with its limitation of operation to these same two persons in the exclusion clause and in the indorsement, they might well assume that if they and no other were to operate the aircraft, there would be coverage. And even if they looked at the Pilot Clause, they would see in bold capitals of typewritten words, their names. Only if their eyes fell upon the small print, in gross contrast with the typewriting, would they see reference to the holding of a medical certificate.

This combination of circumstances (the carefully elicited description of the pilots, of their qualifications and of the accident experience in the application-binder as contrasted with the indirect and obscure "exclusion," and the inadequate physical setup within the contract of adhesion) reinforces our ruling upon the inadequacy of the words themselves upon which respondent relies to effect an exclusion.

Defendants in the declaratory relief action contend that the purported exclusion is statutorily invalid under Insurance Code section 11584. This section forbids issuance or delivery in this state of aircraft policies which exclude coverage because of violation of federal or civil air regulations, with five exceptions. Lack of pilot certification in a stated category by the Federal Aviation Administration is one of these exceptions, but lack of a current medical certificate is not. Because of our ruling that the exclusion contended for by the carrier is not created by the policy itself, it is unnecessary to decide whether legally it could have been effected.

### The "Named Insured" Issue

The carrier contends that there is no coverage for damages resulting from the death of Borne because he was a "named insured." The trial court rejected this contention. Before discussing the merits, a procedural question must be resolved. The insurance company has filed notice of appeal "from the whole and every portion of the

Conclusions of Law made and filed on March 29, 1976, which is adverse to Plaintiff and in favor of Defendants." The judgment itself does not refer to the "named insured" issue, but in a decision issued prior to the judgment, there is this paragraph: "The Court finds that the issue as to whether decedent BORNE was a 'named insured' in the subject policy is ambiguous under the terms of the policy. The Court thus concludes the decedent was not a named insured, but, rather was a 'passenger' on the date in question."

Appeal does not lie from findings of fact or conclusions of law. Defendants propose dismissal of the cross-appeal. Nevertheless, both sides have briefed the subject thoroughly. To dismiss the appeal would result in waste of time. The correctness of the trial court's ruling on this issue ought to be resolved on this appeal even though that ruling was not incorporated into the judgment. The judgment will be deemed to have incorporated the decision. This kind of answer to the problem, as reached in *Gombos* v. *Ashe*, 158 Cal.App.2d 517 [322 P.2d 933], *Tsarnas* v. *Bailey*, 179 Cal.App.2d 332 [3 Cal.Rptr. 629], and *Tenhet* v. *Boswell*, 18 Cal.3d 150, 154 [133 Cal.Rptr. 10, 554 P.2d 330], has been called by the foremost commentator "A highly desirable solution." (6 Witkin, Cal. Procedure (2d ed. 1971) § 49, p. 4064.)

■ The defendants appealing from the declaratory judgment contend that there is coverage resulting from the death of Borne under an indorsement which was made part of the policy from the time of its issue, whereby for an additional premium of $100, liability extends to a passenger. The indorsement reads: "Definition 1. Passenger. The word 'passenger' means any person or persons while in, on or entering the aircraft for the purpose of riding or flying therein or alighting therefrom following a flight or attempted flight therein." Indisputably, Borne was in the aircraft for the purpose of riding or flying therein. The carrier contends, however, that there is no liability because of another provision of the indorsement which contains an amendment reading: "Exclusion 9. under Coverages A, B, and D to bodily injury, sickness, disease or death of any person who is a Named Insured." Coverage B is of "damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any passenger. . . ."

We sustain the defendants' contention. The coverage of Borne as passenger is certain and clear. The attempted exclusion is cloudy. In the first place, there is no definition of "named insured." There is, on the first page of the policy as Declaration 1, the term "Name of Insured" followed

by an arrow pointing to "W. E. WALKER AND/OR C. F. BORNE." It is arguable that the layman purchasing the policy and reading it might deduce from this that the two men matched the term of art, "the named insured"; but it is likely enough that, seeing the words "insured" (merely "insured persons" such as permissive users are not within the exclusion) and "named insured" used repeatedly throughout the policy, they would not be struck by the fact that they were in a special and, in circumstances such as are present here, a disfavored category. The definition frequently used, that "named insured" means the person or persons whose names appear in Declaration 1, is not present.

In the second place, the purported clause of exclusion has low visibility. It is found in form of an amendment under the heading "Definition of Passenger Endorsement." It is not a complete sentence, but merely a prepositional phrase starting with the word "under." It refers to Exclusion 9. There is no group of words (sentence, phrase or clause) which commences "Exclusion 9." There is, at a place described below, a printed passage which reads: "9. under Coverages A, B and D to bodily injury, sickness, disease or death of any person who is a Named Insured or a pilot or crew member."[4] Now, what would give this clause some meaning (assuming "named insured" were defined) would be the words, found on page 2 under the heading "Exclusions": *"This Policy does not apply . . . ."* But these words are separated from the page on which their referent is found by six pages of printed or typed material, containing much verbiage which has nothing to do with exclusions. There is nothing to show, at the end of page 2, that more exclusions are to be found, unless a semicolon after the last word would direct a reader to resume a weary perusal six pages later; and there is no heading six pages later such as "Exclusions Continued." This kind of placing was an element of the negating of an exclusion in *Gray* v. *Zurich Insurance Co.,* 65 Cal.2d 263, 273 [54 Cal.Rptr. 104, 419 P.2d 168]. Not only this, but the print is small, and it does not compare in size with the typewritten definition of passenger, in the very coverage for which a specific premium was charged. It would have been exceedingly simple in composing the indorsement dealing with passenger coverage to follow the typed words defining passenger with a typed statement such as: "But in no event shall there be liability for injury to or death of W. E. Walker or C. F. Borne [or the "named insured" if there had been a definition of that term]." But even if such a simple, explicit expression, appropriately placed, coupling coverage and exclusion in respect of the same subject (passengers) be not

---

[4]The amendment in effect strikes "a pilot or crew member" from the "exclusion."

required, at least it is not too much to demand more than the bouncing references from incomplete sentence on the indorsement to incomplete sentence in printed "9" to subject of sentence six pages anterior, thence to a deduction of what is meant by the undefined term "named insured."

The essayed exclusion does not meet the requirement that it be conspicuous, plain and clear. (*Steven* v. *Fidelity & Casualty Co.,* 58 Cal.2d 862 [27 Cal.Rptr. 172, 377 P.2d 284]; *Gray* v. *Zurich Insurance Co., supra,* 65 Cal.2d 263; *State Farm Mut. Auto. Ins. Co.* v. *Jacober,* 10 Cal.3d 193, 207 [110 Cal.Rptr. 1, 514 P.2d 953]; *Harris* v. *Glens Falls Ins. Co.,* 6 Cal.3d 699, 701 [100 Cal.Rptr. 133, 493 P.2d 861]; *Cal. Comp. & Fire Co.* v. *Ind. Acc. Com.,* 62 Cal.2d 532, 534 [42 Cal.Rptr. 845, 399 P.2d 381].)

The judgment is reversed with directions to the superior court to render judgment declaring that plaintiff insurer is obliged to defend and to indemnify the special administratrix of the estate of Wilburn Eugene Walker, deceased.

Racanelli, P. J., and Newsom, J., concurred.

The petition of the plaintiff and appellent for a hearing by the Supreme Court was denied January 3, 1979.