[Civ. No. 38897. First Dist., Div. Two. Aug. 19, 1977.]

HEALY TIBBETS CONSTRUCTION COMPANY,
Plaintiff, Cross-defendant and Appellant, v.
EMPLOYERS' SURPLUS LINES INSURANCE COMPANY,
Defendant, Cross-complainant and Appellant;
KELLY, KINKEAD & HOAG, Defendant and Appellant.

COUNSEL

Cooley, Godward, Castro, Huddleson & Tatum and Thomas A. H. Hartwell for Plaintiff, Cross-defendant and Appellant.

Hauerken, St. Clair, Zappettini & Hines, George H. Hauerken and Cyril Viadro for Defendant, Cross-complainant and Appellant.

James E. Martin and Richard G. Logan for Defendant and Appellant.

OPINION

COHN, J.*—This case involves the interpretation of certain language in an insurance policy providing "all risk" coverage for an underwater construction project. The facts essential for the determination of the case may be summarized as follows:

The Carmel Sanitary District of Carmel-By-The-Sea (District) wanted to build an outfall pipe and diffuser system by which the treated sewage accumulated in its treatment plant ashore could be carried away and disposed of in the deep sea. The project required the construction of an effluent line (a concrete lined pipe extending way into the ocean) which was to be buried in the ocean floor in order to be protected against waves and surf action. The installation of the effluent line, the primary subject of the project, .necessitated the construction of a temporary trestle. The trestle, which constituted an integral part of the whole project, performed two main functions. One, it was utilized as a place from which the ocean depth was measured for the purpose of insuring a gradual descent of the effluent line. Two, it also served as a platform from which the excavations and pipe-laying operations were conducted.

Pursuant to bid, the building of the above described project was awarded to plaintiff Healy Tibbitts Construction Company, a general

---

*Assigned by the Chairperson of the Judicial Council.

contractor specializing in underwater marine construction (hereinafter appellant or contractor). The contract specifications required that before commencing the work the contractor submit written evidence that he had obtained so-called builders' risk "all-risk" insurance coverage upon the entire project, including completed work and work in progress. Accordingly, the contractor requested its broker, Kelly, Kinkead & Hoag (hereafter Hoag) to review the contract specifications and obtain the necessary insurance. Hoag contacted Walter Clark, an underwriter with Sayre & Toso, which in turn was the underwriting manager of respondent and cross-appellant Employers' Surplus Lines Insurance Company (Employers). In the course of their discussion, Hoag advised Clark in general terms of the construction project, including the fact that it called for the installation of a temporary trestle. Following his meeting with Clark, Hoag directed a memorandum to Clark dated May 24, 1971, which, in effect, confirmed his request for "Builders' Risk 'All Risk' coverage (including Fire, Flood & Earthquake), including completed work and work in progress" with the insured amount of $408,400, and at a premium rate of 2 percent. Thereafter, Hoag received a cover note from Clark on behalf of Sayre & Toso, Inc., wherein they bound the risk, describing the coverage as " 'All Risk' Builders Risk (Installation Floater) as per form PP 1-54-0."

As a result of the foregoing efforts, Employers issued an insurance policy covering the Carmel sewer project for the principal sum of $408,400, with a premium rate of 2 percent on said amount. The $408,400 figure represented the total contract price *which included the cost of the temporary trestle as well.* The insurance policy which bore the description "Installation Floater (Broad Form) Outfall Sewer, Carmel, California," was sent to Hoag, who forwarded it to appellant with a transmittal letter stating that the Employers' policy covered the captioned job for the period June 4, 1971 to December 1, 1971, "as per coverages outlined in the specifications."

In reliance upon Hoag's representation that the construction at issue was fully covered by the insurance policy, appellant commenced its construction activities. The working trestle was installed first, 600 feet in length running into the ocean and across the surf line. On the outboard side, the trestle had a dogleg of approximately 225 feet. On or about November 29, 1971, in the course of pipe-laying operations, an ocean storm arose which destroyed the outboard 225 feet of the trestle constituting the dogleg. The incident caused considerable delay in the

construction as well as sizable damages. As a result of the loss of the working platform, construction activities were suspended during the winter and the project was completed the following spring only by the added expense of applying a floating barge for the pipe-laying operations. As a consequence of the storm, the removal cost of debris also greatly increased.

Knowing that previous damage to the trestle, totaling $11,011.36, caused by two prior storms, had been paid, appellant submitted its claim to Employers to recoup the loss suffered due to the November 29 storm. Placing its primary reliance on the exclusionary clause, Employers rejected the claim on the ground that the temporary trestle was not insured under the policy.

Thereupon, appellant brought an action against both the insurance carrier and Hoag, seeking recovery in three counts. The first cause of action was directed against Employers and was predicated on breach of insurance contract. In the second and third causes, appellant stated alternative causes of action against Hoag in the event recovery on the first cause of action was denied. The theories advanced against Hoag were negligent failure to procure the type of insurance requested (second cause of action), and breach of contract to obtain insurance for appellant (third cause of action). Employers, in turn, filed a cross-complaint against appellant, contending that the two earlier claims had been paid by mistake and therefore are subject to recovery by the cross-complainant.

At trial, the court ruled that the policy as written failed to cover the temporary working trestle as a matter of law. The trial court nonetheless submitted the issue of coverage to the jury on the theory of estoppel based upon the representations made prior to and subsequent to the issuance of the policy. After hearing extensive evidence and being properly instructed, the jury rendered verdicts in favor of appellant and against Employers in the sum of $86,320; in favor of Hoag and against appellant; and in favor of appellant and against Employers on the latter's cross-complaint. At the same time, pursuant to an earlier stipulation of the parties, the court allowed prejudgment interest on the sum of $43,115 of the principal judgment from the date of the complaint.

Employers moved for a new trial and the motion for a new trial was granted on the ground of insufficiency of evidence to justify the verdict.

Subsequently, at the request of appellant, and despite the fact that neither appellant nor Hoag had moved for a new trial, the court amended its prior order, nunc pro tunc, extending the order for a new trial to the judgment rendered in favor of Hoag as well, and limited the new trial to the issue of liability. Appellant and Hoag appealed from the order granting a new trial; Employers, in turn, filed a notice of cross-appeal from the adverse judgments entered on the complaint and cross-complaint.

Although the parties raise a host of issues involving procedural as well as substantive matters, it clearly appears that the initial question presented for adjudication is whether the insurance policy in dispute covers the loss caused to the trestle. Since in order to answer this question we must interpret the insurance contract, first we will set out the basic principles controlling the interpretation of contracts, then proceed to review the pertinent provisions of the policy in light of the controlling principles of construction.

■ As has been frequently reiterated, the paramount rule governing the interpretation of contracts is to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful (Civ. Code,[1] § 1636; *Lemm* v. *Stillwater Land & Cattle Co.* (1933) 217 Cal. 474, 480 [19 P.2d 785]; *Bergin* v. *van der Steen* (1951) 107 Cal.App.2d 8, 13 [236 P.2d 613]; *Shelley* v. *Hart* (1931) 112 Cal.App. 231 [297 P. 82]). The intention of the parties must, in the first instance, be derived from the language of the contract (*French* v. *French* (1945) 70 Cal.App.2d 755 [161 P.2d 687]). The words, phrases, and sentences employed are to be construed in the light of the objectives and fundamental purposes of the parties to the agreement (*Sawyer* v. *City of San Diego* (1956) 138 Cal.App.2d 652, 661 [292 P.2d 233]). In accordance therewith, it has been held that a contract entered into for the mutual benefit of the parties is to be interpreted so as to give effect to the main purpose of the contract and not to defeat the mutual objectives of the parties (*Heidlebaugh* v. *Miller* (1954) 126 Cal.App.2d 35, 38 [271 P.2d 557]; *Bradner* v. *Vasquez* (1951) 102 Cal.App.2d 338, 343-344 [227 P.2d 559]).

■ The specific rules pertaining to the construction of insurance contracts may be summarized as follows: Absent circumstances indicat-

---

[1]Unless otherwise indicated, all references will be made to the Civil Code of California.

ing a contrary intention, words in an insurance policy are to be used in their plain and ordinary sense (§ 1644; *Jarrett* v. *Allstate Ins. Co.* (1962) 209 Cal.App.2d 804, 811 [26 Cal.Rptr. 231]). ■ It is elementary that any ambiguity and uncertainty in an insurance policy is to be resolved against the insurer (*Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 269 [54 Cal.Rptr. 104, 419 P.2d 168]; *Woods* v. *Insurance Co. of North America* (1974) 38 Cal.App.3d 144, 148 [113 Cal.Rptr. 82]). If semantically possible, the insurance contract will be given such construction as will fairly achieve its object of securing indemnity to the insured for the loss or losses to which the insurance relates (*Fageol T. & C. Co.* v. *Pacific Indemnity Co.* (1941) 18 Cal.2d 748, 751 [117 Cal.Rptr. 669]). If the insurer uses language which is uncertain, any reasonable doubt will be resolved against it, and if the doubt relates to the extent or fact of coverage, the language will be understood in its most inclusive sense, for the benefit of the insured (*Wildman* v. *Government Employees' Ins. Co.* (1957) 48 Cal.2d 31, 35-36 [307 P.2d 359]; *Continental Cas. Co.* v. *Phoenix Constr. Co.* (1956) 46 Cal.2d 423, 437-438 [296 P.2d 801, 57 A.L.R.2d 914]; *Burke Concrete Accessories, Inc.* v. *Tolson* (1972) 27 Cal.App.3d 237, 241 [103 Cal.Rptr. 513]; 1 Witkin, Summary of Cal. Law (8th ed.) § 536, p. 457). ■ Finally, it is to be noted that insurance contracts are regarded as contracts of adhesion expressing the superior bargaining power of the insurer (*Hays* v. *Pacific Indem. Group* (1970) 8 Cal.App.3d 158 [86 Cal.Rptr. 815]), and as a consequence the exclusions and exceptions in the insurance policy are strictly construed against the insurer and liberally interpreted in favor of the insured (*Wildman* v. *Government Employees' Ins. Co., supra,* 48 Cal.2d 31; *Cannizzo* v. *Guarantee Ins. Co.* (1966) 245 Cal.App.2d 70, 73 [53 Cal.Rptr. 657]; *Woods* v. *Insurance Co. of North America, supra,* 38 Cal.3d 144, 148).

■ We turn now to the pertinent provisions of the policy. At the outset, we emphasize that the policy as written and issued by Employers embraces coverage for *all* loss and damage to the insured property short of the exceptions specifically noted.[2] Also, the policy provides in general terms that "THIS ENDORSEMENT COVERS PROPERTY OF THE INSURED OR PROPERTY OF OTHERS FOR WHICH THE INSURED MAY BE LEGALLY LIABLE CONSISTING PRINCIPALLY OF THE TYPE DESIGNATED IN THE DECLARATIONS WHILE IN TRANSIT, WHILE AT THE SITE OF INSTALLATION AND WHILE BEING INSTALLED AND TESTED BY THE INSURED OR HIS

---

[2]Paragraph 3 of the policy provides that "THIS ENDORSEMENT INSURES AGAINST ALL RISKS OF DIRECT PHYSICAL LOSS OF OR DAMAGE TO THE INSURED PROPERTY EXCEPT AS OTHERWISE PROVIDED." (Emphasis added.)

EMPLOYEES." (Emphasis added.) Finally, the exclusionary clause upon which Employees' claim of nonliability is predicated excepts only such property or part of property of the insured that fails to constitute an installation or a part of an installation. The pertinent part of the exclusionary clause reads as follows: "2. THIS ENDORSEMENT DOES NOT COVER: [¶] A. PROPERTY OWNED BY THE INSURED WHILE AT LOCATIONS OWNED, LEASED OR CONTROLLED BY THE INSURED, EXCEPT [¶] (I) PREMISES OF INSTALLATION AND [¶] (II) PLACES OF TEMPORARY STORAGE WHILE SUCH PROPERTY IS IN DUE COURSE OF TRANSIT TO OR FROM PREMISES OF INSTALLATION: [¶] B. TOOLS, CONTRACTORS' EQUIPMENT AND ANY PROPERTY NOT A PART OF OR DESTINED TO BECOME A PART OF AN INSTALLATION. . . ." (Emphasis added.)

The cited provisions of the policy thus make it evident that the crucial issue upon which the outcome of the issue of coverage ultimately depends is whether the insurance policy written and issued by Employers extends coverage to the damaged trestle as a part of the installation. We believe a proper interpretation of the insurance contract in dispute compels the conclusion that the trestle built by the contractor must be deemed an installation or a part of an installation within the meaning of the policy, and as a consequence Employers must be held liable as a matter of law under the written insurance provisions.

To begin with, we note that in order to be covered the insurance contract at issue requires only that the property of the insured be "PREMISES OF INSTALLATION," or "A PART OF AN INSTALLATION." The permanency of the installation is clearly not a requisite under the language of the policy. As defined in the cases, the word "install" means " 'to set up or fix . . . for use or service,' " while the word "installation" means " 'the whole of a system of machines, apparatus and accessories set up and arranged for working . . .' " (*Metzler* v. *Thye* (1912) 163 Cal. 95, 97 [124 P. 721]; see also *Smith* v. *Kappas* (1941) 218 N.C. 758 [12 S.E.2d 693, 697]). Webster's Seventh New Collegiate Dictionary (1971) gives an equally broad definition by indicating that "installation" means inter alia: "the act of installing: the state of being installed." The word "install" is defined in part, "to set up for use or service" (p. 438).

We entertain no doubt that under the above-stated broad definition and the circumstances of the instant case, the trestle clearly qualifies either as "PREMISES OF INSTALLATION" or at least "A PART OF AN INSTALLATION" and thus falls within the coverage of the policy. As the

record indicates, the trestle, although removed at the completion of the main project, was built in the same manner as a permanent structure and was affixed to the ground. In fact, it was embedded in the ocean floor, being driven through sand and into rock excavations. Moreover, the record demonstrates that the construction of the trestle comprised a substantial portion of the project, constituting an indispensable and integral part thereof without which the building of the main project could not have been adequately conducted and completed. These important facts lend ample support to the conclusion that the trestle was constructed " 'for use or service' " and also that it was a part and parcel of the " 'whole of a system of . . . apparatus and accessories set up and arranged for working . . .' " (*Metzler* v. *Thye, supra,* 163 Cal. at p. 97), and therefore was an "installation" within the broad definition of the case law.

It is evident that the holding of the trial court that the working trestle as a matter of law was precluded from coverage under the policy is erroneous and lacking in either legal or factual support. It is well settled under established law that the intention of the parties must be ascertained, in the first instance, from the language of the contract itself (*Sawyer* v. *City of San Diego, supra,* 138 Cal.App.2d 652; *French* v. *French, supra,* 70 Cal.App.2d 755). As pointed out above, in the instant case the insurance policy as written fails to require that the installation must be permanent in order to be covered. Secondly, the ruling of the trial court that the insurance policy as a matter of law fails to provide insurance coverage for the trestle prevented the court from taking extrinsic evidence to show what the parties meant by using the phrases "premises of installation" or "installation" or "part of an installation" in the insurance policy (cf. *Pacific Gas & E. Co.* v. *G. W. Thomas Drayage, etc. Co.* (1968) 69 Cal.2d 33 [69 Cal.Rptr. 561, 442 P.2d 641, 40 A.L.R.3d 1373]). Thirdly, even if assumed arguendo that in connection with establishing the theory of estoppel some extrinsic evidence was introduced shedding light on the intention of the parties, it is clear that such evidence at best created but a conflict or ambiguity as to the meaning of the challenged phrases in the insurance policy. It is, of course, axiomatic that where the language of the insurance policy is ambiguous or susceptible of two different constructions, it will be strictly construed against the insurer and that construction adopted which is most favorable to the insured (*Gray* v. *Zurich Insurance Co., supra,* 65 Cal.2d 263; *Wildman* v. *Government Employees' Ins. Co., supra,* 48 Cal.2d 31; *Continental Cas. Co.* v. *Phoenix Constr. Co., supra,* 46 Cal.2d

423). ██ Finally, it is a basic precept that the insurance contract which shows an unequal bargaining strength of the parties must be interpreted so as to promote rather than frustrate the reasonable expectations of the insured, the weaker party to the transaction. In line with this premise, it has been held that where reasonable doubt exists with respect to coverage, it must be decided in favor of coverage in order to protect the weaker party's expectations (*Hays* v. *Pacific Indem. Group, supra,* 8 Cal.App.3d 158). ██ In the instant case the record reveals that the contract specifications expressly required that the contractor obtain "builders' risk all-risk completed value insurance coverage" which would cover the entire project including completed work and work in progress. The contract specifications called for the construction of the working trestle which was to be removed on the completion of the job. Walter Clark of Sayre & Toso, the underwriting property manager for Employers, was apprised of the requirement in the contract to construct a temporary working trestle. It was commonly understood in the industry that the builders all-risk insurance includes coverage for temporary installations such as the working trestle. In harmony with this understanding, on two previous occasions Employers did pay compensation for damages caused to the trestle. Even more significantly, the record is uncontradicted that the premium rate paid by the contractor was 2 percent of the total contract price of $408,400, approximately one-third of which was the construction cost of the working trestle. In short, since it is clear that Employers knew that the working trestle was an integral part of the whole project and also that the premium was calculated and charged on the construction cost of the trestle as well, the reasonable expectations of the insured and elementary fairness require that the insurer be bound to provide coverage for the trestle. In basic English, when one is paid to provide a service and takes the money, it is not unreasonable to require that he provide the service.

The court is aware of the argument of appellant that it is customary to fix the premium of a policy on a construction job on a percentage of the total cost of construction whether covered by the policy or not. If this is indeed so, it seems only fair to the insured that the insurance company point out those portions of the job not covered by the policy either at the time the premium payment is accepted or the policy issued. Such action is even more important and more urgently indicated when the policy is represented as an "all risk" policy.

Finally, even assuming arguendo that the amount of the premium is not determinative of this issue, the policy itself is in the amount of

$408,400, the full amount of the contract including the trestle. Since the cost of the trestle was approximately one-third of the total contract, can Employers seriously argue that it did not intend to insure the trestle? We think not.

Therefore, we hold that the insurance policy issued by Employers as a matter of law provides coverage for the trestle, and as a consequence Employers is bound by virtue of the policy to pay compensation to appellant for its loss sustained to the trestle. This holding disposes of and/or renders moot numerous other issues raised on appeal.

■ We are constrained to comment, however, on the fact that the trial court granted the motion for a new trial on the ground that the estoppel, the alternative theory of recovery, was not supported by sufficient evidence. This conclusion is somewhat difficult to understand in the light of the facts that have already been discussed, i.e., the premium for the policy was calculated in substantial part on the cost of the trestle, and the dollar amount of coverage also includes this cost. It seems to this court that these facts standing alone would support a verdict based on estoppel. Additionally, however, Employers had already paid two similar claims on the trestle. Had Employers denied coverage on the first claim of $2,073.11, a comparatively small sum, appellant could have sought other insurance or challenged Employers' interpretation of the contract instead of being lured into a false sense of security. The problem thus created by Employers' payment of the claim was then compounded by the payment of the second claim of $9,938.25, a substantial sum, by Employers. Why the payment of these claims by Employers would not also support a finding of estoppel is indeed mystifying. Assuming arguendo that there was no coverage, then surely Employers misled the appellant by accepting the premium and paying two similar claims, thereby representing that there was coverage. The appellant was thus induced to refrain from obtaining full coverage in reliance upon Employers' conduct and was damaged, facts which completed the basic requirements of estoppel.

This brings us to two other issues, both of which are obviously without any substance and subject to summary disposition. Employers' contention that the ambiguity in the policy was caused by Hoag, who requested the policy, is manifestly specious. It is unarguable that the policy was written and issued by Employers. ■ The cases are numerous which hold that where the language in a contract is ambiguous the contract

must be construed against the party who has *prepared* it (§ 1654; *Taylor v. J. B. Hill Co.* (1948) 31 Cal.2d 373, 374 [189 P.2d 258]; *Basin Oil Co. v. Baash-Ross Tool Co.* (1954) 125 Cal.App.2d 578, 595 [271 P.2d 122]). This rule applies with particular force in the case of an insurance contract which is considered a contract of adhesion. In such a case any ambiguity must be resolved against the *draftsman* (*Neal* v. *State Farm Ins. Co.* (1961) 188 Cal.App.2d 690, 695 [10 Cal.Rptr. 781]). ■ Employers' second argument that the removal cost of debris was not a proper element of damages is likewise without merit. As noted earlier, the insurance policy provides coverage for "all risk of direct physical loss of or damage to the insured property." The debris itself, in essence, constitutes direct damage to the project and its removal cost is an appropriate item of damages (cf. *Morrison-Knudsen Co.* v. *Phoenix Ins. Co. of Hartford* (8th Cir. 1949) 172 F.2d 124; *Homestead Fire Ins. Co.* v. *DeWitt* (1952) 206 Okla. 570 [245 P.2d 92]).

■ Finally, as to the granting of a new trial as to Hoag, when neither Hoag nor the appellant made a motion for said new trial, the trial court lacked jurisdiction to make such an order. The provisions of section 657 of the Code of Civil Procedure require that a new trial may be granted "on the application of the party aggrieved." The court has no inherent power to grant a new trial on its own motion (see 5 Witkin, Cal. Procedure (2d ed. 1971) § 45, p. 3621). Furthermore, where only one of several defendants serves a notice, the court lacks jurisdiction to grant a new trial as to the others (see 5 Witkin, Cal. Procedure, *supra*; *Lee* v. *Superior Court,* 196 Cal.App.2d 161 [16 Cal.Rptr. 268]).

The order granting a new trial is reversed and the judgment on the complaint is affirmed. The prejudgment interest stipulated to by the jury and allowed by the trial court is ordered reinstated. The judgment on the cross-complaint is affirmed. Costs on appeal are awarded to appellants Healy Tibbitts Construction Co. and Kelly, Kinkead & Hoag.

Taylor, P. J., and Rouse, J., concurred.

A petition for a rehearing was denied September 16, 1977, and the petition of the defendant, cross-complainant and appellant for a hearing by the Supreme Court was denied October 13, 1977.