**Richard ZANFAGNA et al.**

v.

**PROVIDENCE WASHINGTON INSURANCE COMPANY.**

No. 78–287–Appeal.

Supreme Court of Rhode Island.

June 19, 1980.

---

Lembo, DeCesare & Grogan, Vincent A. DeCesare, North Providence, for plaintiffs.

Hanson, Curran & Parks, A. Lauriston Parks, Dennis J. McCarten, Providence, for defendant.

OPINION

KELLEHER, Justice.

The plaintiffs, Richard and Cheryl Zanfagna (the Zanfagnas), brought this civil action against the defendant, Providence Washington Insurance Company (the company), seeking to recover under the terms of their policy the value of various items of personal property stolen on November 13, 1976. The pilfered goods were removed from a garage located on a lot in North Providence where the Zanfagnas were building their new home. Before the construction activities commenced, the Zanfagnas had procured from a company agent a builders' risk policy. Builders' risk insurance protects a property owner or a contractor against loss that may occur during the construction, alteration, or repair of a building.

The policy covered a one-story frame dwelling then being built on Esther Drive, including its foundations, additions, attachments, and all fixtures, machinery, and equipment belonging to and constituting a permanent part of said building. Coverage was also afforded for "materials and supplies of all kinds owned by the named Insured, to be used in the construction of said building while on the described premises or within 100 feet thereof." The policy coverage afforded protection against loss by fire or lightning but contained no coverage for theft. This omission, however, was supposedly cured by the payment of an additional premium and the attachment to the policy of a rider entitled "Builders' Risk Special Extended Coverage Endorsement." The rider also contained certain exclusionary language.

A Superior Court justice granted the company's motion for summary judgment premised on the contention that the Zanfagnas' loss came within an exclusion that exempted from coverage the "theft of any property which at the time of loss is not an integral part of a building or structure." The Zanfagnas contend that the trial justice erred because the exclusion is reasonably susceptible of two different meanings, and in such event the exclusion should be construed against the insurer.

Our research indicates that in some instances similar language, with respect to both coverage and exclusion, has been held to have been unambiguous and at other

times ambiguous. A Texas court found no ambiguity in construing a policy that included within its definition of a dwelling " 'materials in and adjacent to the dwelling for making alterations, extensions, and repairs thereto' " and a physical-loss endorsement that exempted the theft of any property not an integral part of the dwelling. The loss was a new carpet that was stored overnight in an attached garage prior to its projected installation in the adjoining house the next day. The court ruled that the carpet was "an integral part of the materials in and adjacent to the dwelling * * * and thus within the protection afforded by the insurance policy." *Fidelity & Guaranty Insurance Underwriters, Inc. v. Gardner*, 471 S.W.2d 449, 450 (Tex.Civ.App.1971).

In construing a builders' risk policy issued to an apartment-house contractor, a policy that afforded coverage to "temporary structures, material, equipment, and supplies incidental to the construction of the building" but which limited theft loss by the "integral part" exclusion, a Florida court classified the insurer's contention as leading to an absurd conclusion and ruled that the loss, consisting of range hoods, chandeliers, fluorescent lights, and draperies, was compensable because the items fell within the specific coverage afforded by the policy. *Travelers Indemnity Co. v. Milgen Development, Inc.*, 297 So.2d 845, 847 (Fla.App. 1974).

Other jurisdictions have described the use of "integral part" in the exclusion as being ambiguous. *See Healy Tibbets Construction Co. v. Employers' Surplus Lines Insurance Co.*, 72 Cal.App.3d 741, 751, 140 Cal. Rptr. 375, 380 (1977) (temporary trestle held integral part of construction project); *Alpha Real Estate Development, Inc. v. Aetna Life & Casualty Co.*, 570 P.2d 585 (Mont. 1977) (commercial carpet-cleaning machine held integral part of premises for coverage under property-insurance policy); *Ira S. Bushey & Sons v. American Insurance Co.*, 237 N.Y. 24, 29, 142 N.E. 340, 342 (1923) (destruction by fire of unfinished lumber and material destined for use by a shipbuilder came within the builders' risk proviso that supplied coverage while the vessel was "under construction").

This diversity of judicial thought, in our opinion, is proof positive of the ambiguities found in the policy sold to the Zanfagnas. The term "integral part" may mean, as the company suggests, those items actually installed and therefore physically attached to the structure. In the alternative, "integral part" may refer, and with good reason, to articles, supplies, and fixtures that constitute an "essential" part of a building, whether or not they are physically attached. Here, the Zanfagnas' loss included electrical fixtures, appliances, and interior doors that at the time of the theft were being temporarily stored in a garage while awaiting incorporation within the main structure. It cannot be denied that many reasonable people would consider these items to be an integral part of the Zanfagnas' house even though they have not been integrated within the structure by screws, nails, or bolts.

The language of the exclusion, even when considered alongside the coverage afforded by the company's policy, is not so clear cut and unequivocal as it might be. Long ago the New York Court of Appeals, in considering a dispute somewhat akin to what is presently before us, observed that, in resolving the issue, consideration must be given to the purpose of the builders' risk insurance, and the policy should be read, if it could be, "without twisting words and rendering plain meaning nugatory" so as to make the scheme of the policy reasonable and to protect the builder against loss to material that has not as yet been built into the structure. *Ira S. Bushey & Sons v. American Insurance Co.*, 237 N.Y. 24, 28, 142 N.E. 340, 341 (1923). We share these sentiments.

We have before us a policy that, when read in its entirety, admits to two reasonable meanings as far as the exclusion is concerned. In these circumstances, our rule of construction requires that we charge the fault to the insurer who selected the language and that we accept the interpretation that favors the insureds. *Elliott Leases Cars, Inc. v. Quigley*, 118 R.I. 321, 373 A.2d

810 (1977); *Groucher v. John Hancock Mutual Life Insurance Co.*, 113 R.I. 672, 324 A.2d 657 (1974); *Nagy v. Lumbermen's Mutual Casualty Co.*, 100 R.I. 734, 219 A.2d 396 (1966). Pursuant to these rules, the items taken from the Zanfagnas' garage must be considered to be integral parts of the structure, and the company is obligated to compensate the Zanfagnas for their loss.

The plaintiffs' appeal is sustained, the judgment appealed from is vacated, and the case is remanded to the Superior Court for further proceedings.

MURRAY, J., did not participate.