[No. E004491. Fourth Dist., Div. Two. May 12, 1989.]

MISSION NATIONAL INSURANCE COMPANY, Plaintiff and Respondent, v.
COACHELLA VALLEY WATER DISTRICT et al., Defendants and Appellants.

486

**COUNSEL**

Redwine & Sherrill, E. Michael Kaiser, Gerald D. Shoaf, Thompson & Colgate, John A. Boyd, James D. Ward, Fisher & Hurst, Charles Negley, Peter O. Glaessner and Lori A. Sebransky for Defendants and Appellants.

Simon, Buckner, Haile & Midgal, Simon, Buckner & Haile, Brian P. Simon, Scott Simon, Stuart L. Brody and Alan G. Buckner for Plaintiff and Respondent.

**OPINION**

HOLLENHORST, J.—This appeal presents causation and coverage questions under an all-risk builder's risk insurance policy for a construction project.

The insurance company, plaintiff Mission National Insurance Company (Mission), paid benefits under the policy of $3,099,744.63 and brought this action to recover those benefits from the owner, defendant Coachella Valley Water District (District), and the builder, defendant Yeager Construction Company (Yeager). The designer of the project, Bechtel Civil & Minerals, Inc. (Bechtel), is a cross-defendant. ■■ ■■■■ All parties appeal from various portions of the judgment.[1]

FACTS

1. *The Project.*

The construction project is a five-mile long concrete-lined flood control channel in the vicinity of Palm Desert. Two concrete debris basins collect

---

[1] The trial in this case was limited to the question of Mission's right to recover the funds it advanced. The cross-complaints raised the issue of which defendant was responsible for the defect which caused the loss. This issue was bifurcated for trial at a later date. Normally, an appeal from a judgment rendered on the complaint without an adjudication of the issues raised by cross-complaints will be dismissed because it violates the one final judgment rule. (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 56, p. 78.) An exception is recognized in certain cases where issues have been severed and tried separately. (*Id.,* at § 66, pp. 90-91, and Supp. pp. 7-8.) Since there was a separate trial of the liability issue here, we consider the merits of that issue here.

debris and stormwater from two canyon creeks and channel the water into another channel north of Palm Desert. The channel, which is west of Highway 74, runs generally south to north.

2. *The Damage.*

On August 17, 1983, the construction of the channel had been substantially completed. However, heavy rains beginning on that day undermined the walls and bottom of the channel. The damage to the walls and bottom of the channel included cracking, curvature of the walls, and uplifting of certain bottom sections. The damaged sections were subsequently replaced. Although the cause of the damage was in issue, Mission advanced approximately $3 million to repair the damage. Mission then commenced this action to recover the money it advanced.

3. *The Insurance Policy.*

Three provisions of the insurance policy are at the heart of the coverage dispute. The first is the insuring clause. It states: "This Policy, subject to the limitations, exclusions, terms and conditions hereinafter mentioned, is to insure, in respect of occurrences happening during the period of this policy . . . against All Risks of Physical Loss of or Damage to: a) Property in course of construction . . . ." The parties generally agree that flood was a risk intended to be covered under this clause.

The second provision is an endorsement to the policy. The endorsement states: "It is further understood and agreed that the peril of flood is included in this policy. The definition of flood is as follows: Water damage *caused by, contributed to or aggravated by* any of the following: (1) Flood, surface water . . . (3) Water below the surface of the ground including that which exerts pressure on or flows, seeps or leaks through . . . foundations, walls, basement or other floors . . . ." (Italics added.) Defendants rely on this endorsement.

The third clause is an exclusion which provides: "THIS POLICY DOES NOT COVER . . . c) loss or damage *directly or indirectly caused* by fault, defect, error or omission in design, plan or specification." (Italics added.) Mission relies on this exclusion as the basis for this action. (See, generally, Annot. (1985) 41 A.L.R.4th 1095.)

4. *The Findings of the Jury.*

The jury returned a special verdict consisting of answers to six questions. By its answers, the jury found that the design of the channel was defective,

that the damage to the channel was caused by the defect, that the defect was the efficient cause of damage to the channel, that flooding was a cause, but not the efficient cause, of damage to the channel, and that damages caused by the design defect were $3,059,973.63. Based on these findings, the trial court found that there was no coverage under the policy.

## ISSUES PRESENTED

■ Since the coverage language in the subject policy allows recovery for water damage that is *caused* by flooding, the first issue is whether the causation issue was properly submitted to the jury for decision. Defendants Yeager, Bechtel, and the District generally argue that the jury was improperly instructed on causation issues.

■ Since the policy also allows recovery for damage caused by flooding that *contributes to or aggravates* the damage, the second issue is whether this language provides coverage even if flooding was not a proximate cause of the loss. Defendants Yeager, Bechtel, and the District argue that this language provides coverage as a matter of law. Plaintiff Mission contends that the trial court correctly submitted the case to the jury to decide all causation issues.

## CAUSATION ISSUES

1. *The Garvey Case.*

In *Garvey* v. *State Farm Fire & Cas. Co.* (1989) 48 Cal.3d 395 [257 Cal.Rptr. 292, 770 P.2d 704], our Supreme Court "sought to resolve some of the confusion that has arisen regarding insurance coverage under the 'all-risk' section of a homeowner's insurance policy when loss to an insured's property can be attributed to two causes, one of which is a nonexcluded peril, and the other an excluded peril." (*Id.*, at p. 398) Before discussing the case in detail, it is necessary to understand the statutes and the prior cases.[2]

2. *The Statutes.*

The general rule is that an insurance company is liable when the insured peril proximately causes a loss. This rule is codified in Insurance Code section 530 which states: "An insurer is liable for a loss of which a peril

---

[2] The *Garvey* opinion was filed after briefing and oral argument in this case. We invited the parties to submit additional briefs discussing the applicability of *Garvey* to this case, and they have done so.

insured against was the proximate cause, although a peril not contemplated by the contract may have been a remote cause of the loss; but he is not liable for a loss of which the peril insured against was only a remote cause."

This rule must be read with Insurance Code section 532, which states: "If a peril is specially excepted in a contract of insurance and there is a loss which would not have occurred but for such peril, such loss is thereby excepted even though the immediate cause of the loss was a peril which was not excepted."

3. *The Efficient Proximate Cause Standard.*

A leading case interpreting these sections is *Sabella* v. *Wisler* (1963) 59 Cal.2d 21 [27 Cal.Rptr. 689, 377 P.2d 889]. In that case, a policy insured against "all physical loss" to a home, but excluded loss caused by settling. The builder constructed the home on uncompacted soil and negligently installed the sewer line. Water escaping from the broken sewer line caused settling of the home. Negligent installation of the sewer line was a covered peril but subsidence was an excluded peril. The court found that the insurance company was liable "because the rupture of the sewer line attributable to the negligence of a third party, rather than settling, was the efficient proximate cause of the loss." (*Id.,* at p. 31.) The court defined efficient proximate cause by quoting 6 Couch on Insurance (1930) section 1466: " '[I]n determining whether a loss is within an exception in a policy, where there is a concurrence of different causes, the efficient cause—the one that sets others in motion—is the cause to which the loss is to be attributed, though the other causes may follow it, and operate more immediately in producing the disaster.' "[3] (*Id.,* at pp. 31-32.)

In *Garvey,* the court reaffirmed *Sabella,* stating: "[*Sabella*] set forth a workable rule of coverage that provides a fair result within the reasonable expectations of both the insured and the insurer whenever there exists a causal or dependent relationship between covered and excluded perils." (*Garvey* v. *State Farm Fire & Cas. Co., supra,* 48 Cal.3d 395.)

4. *The Concurrent Causation Standard.*

In certain cases, there is no "efficient proximate cause" because separate losses have been sustained from independent causes. The leading case dis-

---

[3]The current edition discusses this subject in section 74:711: "A direct and proximate cause is the active and efficient cause that sets in motion a train of events which bring about a result without the intervention of any force, starting and working actively and efficiently from a new and independent source." (18 Couch on Insurance (2d ed. 1983) § 74:711, p. 1021.)

cussing this situation is *State Farm Mut. Auto. Ins. Co.* v. *Partridge* (1973) 10 Cal.3d 94 [109 Cal.Rptr. 811, 514 P.2d 123]. In that case, two negligent acts of the insured, one auto-related and one not auto-related, were concurrent causes of an accident. The court found that the *Sabella* analysis is not useful when the two causes are independent of each other. The court said: "Although there may be some question whether either of the two causes in the instant case can be properly characterized as *the* 'prime,' 'moving' or 'efficient' cause of the accident we believe that coverage under a liability insurance policy is equally available to an insured whenever an insured risk constitutes simply *a* concurrent proximate cause of the injuries. That multiple causes may have effectuated the loss does not negate any single cause; that multiple acts concurred in the infliction of injury does not nullify any single contributory act." (*Id.,* at pp. 104-105, fns. omitted.) Accordingly, the court concluded that "coverage is available whenever an insured risk constitutes a proximate cause of an accident, even if an excluded risk is a concurrent proximate cause . . . ." (*Id.,* at p. 105, fn. 11. See also 18 Couch on Insurance *supra,* § 74:721, p. 1026.)

In *Garvey,* the court emphasized that *Partridge* dealt with causation only in the third party liability insurance context. The majority opinion states: "misinterpretation of the *Sabella* definition of 'efficient proximate cause' has added to the confusion in the courts and, in part, is responsible for the erroneous application of *Partridge* . . . to first party property loss cases." (*Garvey* v. *State Farm Fire & Cas. Co., supra,* 48 Cal.3d at pp. 403-404.) The court therefore limited *Partridge* to third party liability insurance cases, and held it inapplicable to first party property damage cases.

 Accordingly, different rules now apply for first and third party cases. The basic difference between the two types of cases is that: "if the insured is seeking coverage against *loss or damage sustained by the insured,* the claim is first party in nature. If the insured is seeking coverage against *liability of the insured to another,* the claim is third party in nature." (48 Cal.3d at p. 399, fn. 2, original italics.) In this case, the insurer sought a declaration that there was no coverage under the policy because the design defect exclusion applied. While the basic dispute is a first party dispute between the insurer and the insured, the case has third party aspects because of the District's potential liability for the design defect. The parties have treated this as a first party case because the liability issues were severed for trial at a later date. We therefore follow the *Garvey* and *Sabella* rules, and disregard *Partridge.*

## 5. The Trial Court's Application of Sabella.

The trial court treated this as a *Sabella* case and asked the jury to decide causation issues framed in *Sabella* terms. Plaintiff Mission argues that the trial court's application of *Sabella* was correct.

As described above, *Sabella* requires coverage in the situation where a covered peril is the "efficient moving cause" of the loss. ■ Normally, the insurer has the burden of proving that the cause of the loss is an excepted cause, and the jury decides which cause was the "efficient moving cause" of the loss. (*Strubble* v. *United Services Auto. Assn.* (1973) 35 Cal.App.3d 498, 504 [110 Cal.Rptr. 828]; 13A Couch on Insurance, *supra,* § 48:142, p. 143.) ■ The jury's findings are conclusive if the facts are disputed. If the facts are undisputed, the question then becomes whether there is proximate cause as a matter of law. (*Sabella* v. *Wisler, supra,* 59 Cal.2d at p. 32; *Sauer* v. *General Ins. Co.* (1964) 225 Cal.App.2d 275, 279 [37 Cal.Rptr. 303]; *Premier Ins. Co.* v. *Welch* (1983) 140 Cal.App.3d 720, 724 [189 Cal.Rptr. 657]; 18 Couch on Insurance, *supra,* §§ 74:700-74:701, 74:703, pp. 1010-1013, 1015.)

■ Here, conflicting factual theories were presented to the jury for its determination. Mission offered the testimony of two experts, Mr. Mackintosh and Mr. Robinson.[4] Mr. Mackintosh's theory was that the channel was defectively designed because it had no weepholes or other devices to relieve hydrostatic pressure. As a result, the heavy rains buckled the channel walls and lifted floor sections of the channel. Mr. Mackintosh testified that, in his opinion, the damage was caused by water outside the channel acting on the channel in this manner.

Mr. Robinson testified that another cause of the damage was that the design of the channel did not allow water sufficient access to the channel. This defect forced flood water around and under the channel.

In opposition, Bechtel's expert, Mr. Fry, testified that the design of the channel met good engineering and design standards. He also testified that weepholes are generally designed into a structure to relieve ground water pressure, but that he did not have an opinion as to whether weepholes would have prevented the damage that occurred here. He agreed, however, that water was *a* cause of the damage.

---

[4] Defendants challenge the qualifications of these experts but defendants have not shown that the trial court abused its discretion in allowing the experts to testify. (Evid. Code, § 801; *Cavers* v. *Cushman Motor Sales, Inc.* (1979) 95 Cal.App.3d 338, 350 [157 Cal.Rptr. 142].)

The District denied that its deletion of weepholes from Bechtel's original plans was a design error and argued that there was no hydrostatic pressure problem because of the permeability of desert soils. The District also argued that the causes were concurrent.

Since defective design was an exclusion, Mission had to prove that the insured's loss was proximately caused by the excluded peril. The jury had to weigh the conflicting evidence and decide if the design was defective and, if so, if the design defect caused the damage. The jury decided that the design was defective and that the defective design caused the damage. The jury also decided that flooding was a cause of the damage and then decided that the "efficient cause of damage" was the design defect.

In *Garvey,* the court held that "[c]overage should be determined by a jury under an efficient proximate cause analysis." (*Garvey* v. *State Farm Fire & Cas. Co., supra,* 48 Cal.3d at p. 412.) Since in this case, as in *Garvey,* sufficient evidence was introduced to support either the theory that the flood caused the damage or the theory that the design defect caused the damage, the jury had to find which cause was the efficient proximate cause of the loss.

## 6. *The Jury Instructions.*

Since *Garvey* was decided long after the trial here, the issue is whether the instructions given to the jury accurately stated the law as subsequently interpreted in *Garvey.* While Mission argues that the jury was properly instructed under *Garvey* and *Sabella,* defendant Bechtel contends that "*Garvey* indicates that the jury was misinstructed how to determine the 'efficient proximate cause' of the damage."

The instruction given here reads as follows: "Where there is a concurrence of different causes, the efficient cause, the one that sets the others in motion, is the cause to which the damage is to be attributed, though the other cause may follow it and operate more immediately in producing the damage. There may, however, be no single efficient cause."

The trial court apparently derived this instruction from *Sabella, Premier Ins. Co.* v. *Welch, supra,* 140 Cal.App.3d 720 and related cases. In *Premier,* the court found that the efficient cause of a landslide was a negligently maintained drain, a covered risk under an all-risk homeowner's policy, rather than heavy rainfall, an excluded risk. The court said: "While it is true that the heavy rainfall was the first link in the causal sequence, the immediate or proximate cause of loss was the damage to the drain which set

in motion the chain of events leading to the ultimate destruction of the dwelling." (*Id.,* at p. 725.) In other words, prior rains had not caused any damage, and the slide would not have occurred if the drain was undamaged. *Garvey* approved the *Sabella* analysis in *Premier,* and disapproved its *Partridge* analysis. (*Garvey* v. *State Farm Fire & Cas. Co., supra,* 48 Cal.3d at pp. 411-412.)

In *Premier,* the court relied on a case which is factually similar to this case, *Safeco Ins. Co. of America* v. *Guyton* (9th Cir. 1982) 692 F.2d 551. In that case, the court considered issues arising from a 1976 storm which broke through flood control facilities and flooded areas of Palm Desert in the vicinity of the channel involved in this case. The action was brought by the carrier of certain homeowner policies to determine coverage, based on the theory that the flood control structures were negligently constructed and maintained. The trial court applied *Sabella* and found that since the flood preceded the failure of the flood control structures, the flood damage exclusion of the policies precluded coverage. The Ninth Circuit Court of Appeal reversed, finding *Partridge* dispositive.

*Garvey,* however, holds that the *Guyton* court's reliance on *Partridge* was erroneous, and that the federal court "should have looked to *Sabella* for resolution to determine whether the defectively maintained flood control system was the efficient proximate cause of the property losses even though the flood was the 'immediate' cause of the losses, or whether the trial court correctly denied coverage in determining that flooding was the efficient proximate cause of the loss." (*Garvey* v. *State Farm Fire & Cas. Co., supra,* 48 Cal.3d at p. 411.)

*Garvey* also attempts to clarify the *Sabella* standard. The Court of Appeal in *Garvey* had interpreted the *Sabella* language literally, saying "*Sabella* established that in determining coverage in such a case a court should isolate the single cause that set in motion any other 'causes' or 'forces' or 'chain of events' that led directly to the damage." (*Garvey* v. *State Farm Fire & Cas. Co.* (Cal.App.) A017878, rev. granted Sept. 18, 1986.)

The Supreme Court said "The Court of Appeal here replaced the *Sabella* term 'efficient proximate cause' with the term 'moving cause.' *Sabella* defined 'efficient proximate cause' alternatively as the 'one that sets others in motion' (59 Cal.2d at p. 31), and as 'the predominating or moving efficient cause.' (*Id.,* at p. 32.) We use the term 'efficient proximate cause' (meaning predominating cause) when referring to the *Sabella* analysis because we believe the phrase 'moving cause' can be misconstrued to deny coverage erroneously, particularly when it is understood literally to mean

the 'triggering' cause. Indeed, we believe misinterpretation of the *Sabella* definition of 'efficient proximate cause' has added to the confusion in the courts . . . ." (*Garvey* v. *State Farm Fire & Cas. Co., supra,* 48 Cal.3d at pp. 403-404.)

The trial court instruction here was erroneous because it also defined "efficient proximate cause" as the cause that sets the others in motion. It thus erroneously suggested to the jury that the jury should search for the triggering cause, rather than the predominating cause. However, the jury did not respond to the suggestion, for it found that the design defect was the efficient proximate cause and the flood was only a cause of the loss. Thus, even if the flood, a covered event, was the immediate and triggering cause, the trial court applied the exclusion because the design defect was the efficient proximate cause.

Although the next step is to consider whether the error in this instruction requires reversal, this analysis is unnecessary in view of our opinion on the coverage question. We therefore turn to that subject.

### COVERAGE BY POLICY LANGUAGE

In the trial court and on appeal, Yeager, Bechtel and the District contend that the court should consider only the language of the policy itself in deciding the coverage issue. According to Yeager and Bechtel, the broad language of the endorsement ("caused by, contributed to or aggravated by") survives application of the language of the exclusion ("directly or indirectly caused by") and evidences an intent to provide coverage regardless of the sequence of causation. Thus, defendants argue, a flood that contributes to or aggravates the damage is an insured risk. Defendants therefore contend that a causation analysis is unnecessary, because the flooding contributed to or aggravated the loss, even if it was not the efficient proximate cause of the loss. In effect, defendants contend that the parties, by their insurance contract, can agree that a different or broader standard is applicable, instead of relying on the statutory rules of Insurance Code sections 530 and 532.

Contracts of insurance, like all contracts, must be interpreted to give effect to the intention of the parties. (Civ. Code, § 1636; *Atlas Assurance Co.* v. *McCombs Corp.* (1983) 146 Cal.App.3d 135, 143 [194 Cal.Rptr. 66].) "Thus it is a well-established principle that each clause of an insurance contract must be considered with reference to every other clause on which it has any bearing and all of the provisions are to be construed together for the purpose of ascertaining the intent of the parties. (Civ. Code, § 1641 . . . .)" (*Jarrett* v. *Allstate Ins. Co.* (1962) 209 Cal.App.2d 804, 809 [26 Cal.Rptr.

231].) ▮ However, if there is any ambiguity or uncertainty as to coverage, the ambiguity or uncertainty is resolved against the insurer. (*White* v. *Western Title Ins. Co.* (1985) 40 Cal.3d 870, 881 [221 Cal.Rptr. 509, 710 P.2d 309].) "The purpose of this canon of construction is to protect the insured's reasonable expectation of coverage in a situation in which the insurer-draftsman controls the language of the policy." (*Ibid.*) ▮ Accordingly, coverage language is interpreted in its most inclusive sense (*Healy Tibbitts Constr. Co.* v. *Employers' Surplus Lines Ins. Co.* (1977) 72 Cal.App.3d 741, 749 [140 Cal.Rptr. 375, 97 A.L.R.3d 1258]) and exclusions in a policy are narrowly interpreted. (*Delgado* v. *Heritage Life Ins. Co.* (1984) 157 Cal.App.3d 262, 271 [203 Cal.Rptr. 672].) As our Supreme Court stated in *Partridge,* "Whereas coverage clauses are interpreted broadly so as to afford the greatest possible protection to the insured [citations], exclusionary clauses are interpreted narrowly against the insurer." (*State Farm Mut. Auto. Ins. Co.* v. *Partridge, supra,* 10 Cal.3d at pp. 101-102.)

▮ In response to defendants' argument, Mission relies on *Gillis* v. *Sun Ins. Office, Ltd.* (1965) 238 Cal.App.2d 408 [47 Cal.Rptr. 868, 25 A.L.R.3d 564]. In that case, a windstorm caused a gangway on a dock to be lifted up and fall against the dock. The dock subsided in the water and sustained further damage from the water and waves. The policy excluded loss "resulting from, contributed to or aggravated by" surface water and waves. Although the parties agreed that the loss was due, in part, to water damage, defendant argued that the proximate cause of the loss was the windstorm. Plaintiff argued that the language of the exclusion voided the application of the usual rules of proximate cause and manifested an intent to eliminate coverage in the situation presented in that case. The court replied: "Under such circumstances the action of the water and waves, although contributing to and aggravating the damage, cannot be said to be an independent contributing or aggravating cause." (*Id.,* at p. 420.) The court then discussed *Sauer* v. *General Ins. Co.* (1964) 225 Cal.App.2d 275 [37 Cal.Rptr. 303], and found that ". . . *Sauer* appears to extend *Sabella* to the extent that neither contribution nor aggravation as a matter of law will bar recovery where they result from a peril covered by the insurance." (*Gillis* v. *Sun Ins. Office Ltd., supra,* 238 Cal.App.2d at p. 421.)

In this case, the "contributed to or aggravated by" language is found in a coverage clause, rather than in an exclusion clause. This fact distinguishes the case from the *Gillis* and *Sauer* cases. This case involves an all-risk policy and the endorsement to the policy evidences a clear intention to cover flood damage while the channel was being constructed. (See, generally, Annot. (1980) 97 A.L.R.3d 1270.) The broad language of the endorsement shows that Yeager, as the builder, and the District, as a named insured, intended

to obtain protection from floods while the Project was being built. The policy endorsement was specially written to carry out this intention, and the terms of the endorsement control over the printed terms of the policy. (Civ. Code, § 1651; *Continental Cas. Co.* v. *Phoenix Constr. Co.* (1956) 46 Cal.2d 423, 431 [296 P.2d 801, 57 A.L.R.2d 914].) The broad language ("contributed to or aggravated by") also shows that the parties contemplated coverage even though other causes interacted to cause the loss. Since the jury found that flooding was *a* cause of the loss, it must have found that flooding contributed to or aggravated the loss, even though flooding was not the efficient proximate cause of the loss. We therefore think that the trial court misinterpreted the jury's decision.

In *Sabella* the Supreme Court was construing the causation rules of Insurance Code sections 530 and 532. In this case, the insurance contract itself provides broader rules for determining coverage. The insurance company, in drafting the insurance contract, had the right to enlarge coverage beyond the statutory language, and obviously did so to achieve the objective of insuring the builder against loss from floods. The broad coverage language, which includes flooding as a contributing or aggravating factor, prevails over the statutory rules of causation. (*State Farm Fire and Cas. Co.* v. *Martin* (9th Cir. 1989) 872 F.2d 319, 321, affirming 668 F.Supp. 1379, 1382-1383; *Pacific etc. Co.* v. *Williamsburg* (1910) 158 Cal. 367, 373 [111 P. 4].) This conclusion is also supported by the case cited in *Martin*: "[I]n the absence of any general declaration of public policy . . . we discern no reason to interfere with the parties' full freedom to contract for coverage on any terms not specifically prohibited by statute." (*National Ins. Underwriters* v. *Carter* (1976) 17 Cal.3d 380, 388 [131 Cal.Rptr. 42, 551 P.2d 362].)

In *Garvey* v. *State Farm Fire & Cas. Co., supra,* 48 Cal.3d 395, our Supreme Court found that the Court of Appeal "failed to differentiate between property loss coverage under a first party policy and tort liability coverage under a third party policy of insurance." (*Id.,* at pp. 405-406.) The court then points out that coverage analysis in the property insurance context draws on the relationship between perils that are either covered or excluded in the contract. (*Id.,* at p. 406) As Justice Kaufman points out in his concurring opinion, "The first flaw in *Partridge* is, as the majority suggests, that it imported into the determination of coverage, concepts and rules of tort law inapplicable to the contractual question of the coverage afforded by an insurance policy, and, based on them, adopted the tort rule of concurrent causation to determine coverage." (*Id.,* at pp. 413-414.) Justice Kaufman then proceeds to emphasize that "the question of coverage in

both first party and third party cases is a contract question and must be determined under contract principles. [Citations.]" (*Id.*, at p. 414.)

In this case, applying the contract interpretation principles discussed above, we find that there was coverage because flooding contributed to or aggravated the loss, even though the excluded design defect was found to be the efficient proximate cause of the loss. We therefore agree with defendants that the design exclusion does not negate the coverage language and the broad language of the endorsement.

## OTHER ISSUES

In view of the decision we reach, it is unnecessary to consider other substantial issues raised by defendants. These issues include the instructions to the jury regarding the definition of design defect and the burden of proof. Other substantial issues raised by defendants include the apportionment of damages, and the statute of limitations.

Since Mission is not entitled to recovery, it is also unnecessary to consider its cross-appeal on the issue of prejudgment interest.

## DISPOSITION

The judgment is reversed with directions to enter judgment for defendants Coachella Valley Water District and E. L. Yeager Construction Company on the complaint and for Bechtel Civil & Minerals, Inc. on its declaratory relief cross-complaint.

Campbell, P. J., and McDaniel, J., concurred.

A petition for a rehearing was denied June 1, 1989, and respondent's petition for review by the Supreme Court was denied July 27, 1989.